## Chas. Roberts v. The State.

### No. 3019. Decided June 14, 1905.

**1.—Murder—Dying Declarations—Charge of Court.**

Where, in a prosecution for murder, the dying declarations were offered, after it was shown that deceased, upon being advised that he could not live and that his life was prolonged by opiates, sent for his fiancée and so informed her; that he was delirious when not aroused, but when so aroused talked connectedly and intelligently, although at times delirious when so awakened. Held that a sufficient predicate was laid for the admission of his dying declarations under proper instructions of the court with reference to the law governing such declarations.

**2.—Same—Self-Defense—Combined Attack—Self-Defense.**

Where in a trial for murder the evidence showed a combined attack by deceased and another upon defendant and a preparation on part of deceased and others to make such attack, it was error to limit the attack to the deceased alone in the court's charge, and the theory of a combined attack and the issues

as raised by the evidence should have been properly submitted in the court's charge on self-defense.

**3.—Same—Provoking the Difficulty—Charge of Court.**

See opinion or facts held not to raise the issue of provoking the difficulty, and where a charge on that phase of the case was held to be error.

**4.—Same—Evidence—Contradictory Testimony.**

Where the whole difficulty, resulting in the homicide, grew out of a report about a certain statement imputed to defendant by the deceased and another and affecting the conduct of the latter with reference to certain females, which report was introduced by the State to show that defendant was its author, it was error not to allow defendant to prove that he did not make such statement as imputed to him and that he was not its author.

**5.—Same—Deadly Weapon—Evidence—Unloaded Pistol.**

Where in a prosecution for murder, it was proved that it was not known to defendant whether the pistol in the hands of deceased was unloaded, it was error to permit the State to prove that it was unloaded and defendant's right of self-defense could not be impaired in this manner.

Appeal from the District Court of Nacogdoches. Tried below before Hon. James I. Perkins.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*C. A. Hodges, Geo. F. Fuller & A. Chesnutt,* for appellant.—On dying declarations: Meyers v. State, 26 S. W. Rep., 196. On impeaching testimony: Herd v. State, 43 Texas Crim. Rep., 575. On question of self-defense: Scott v. State, 10 Texas Ct. Rep., 964; Elliston v. State, 10 Texas Crim. App., 361; Johnson v. State, 43 Texas Crim. Rep., 476; McLaughlin v. State, 10 Texas Crim. App., 340. On question of deadly weapon: Adams v. State, 44 Texas Crim. Rep., 64; 5 Texas Ct. Rep., 32.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction is for manslaughter. When the dying declarations were offered, appellant reserved several exceptions, involving their admissibility. Drs. Fuller and Blackshear testified that they informed deceased he could not survive. They further stated, they could only keep him alive by the use of opiates. Deceased stated they said he could not live, sent for Miss Fuller, to whom it seems he was engaged, and told her he could not live, and released her from the engagement and requested that she should marry some man and make him a good wife. This is the predicate of his belief in approaching death. In regard to the question of his mental condition, the facts show beyond controversy that he was under the influence of opiates, used as a means of prolonging his life as long as possible; and when not aroused was delirious; but when awakened and aroused talked connectedly and intelligently. However, some of the testimony does not go so far, and shows that

while awake and talking, his mind was at times delirious. Under the authority of Taylor v. State, 38 Texas Crim. Rep., 552; this testimony was admissible, sufficient predicate being laid under that authority. But the court should have instructed the jury appropriately in regard to these issues. While it is perhaps fairly clear that deceased was conscious of approaching death, it is not so clear in regard to his mental status. Having admitted the testimony under the circumstances the court should have guarded this matter by an appropriate charge. As was stated in Sims v. State, 36 Texas Crim. Rep., 154. Upon another trial an appropriate charge should be given in this connection.

It is contended that the court should have charged the jury with reference to the law of self-defense, as against the combined attack of more than one assailant. The evidence bearing upon this question shows that there was ill-feeling between deceased and appellant growing out of the report that had been circulated in the neighborhood, to the effect that deceased and Eugene Baker had made an arrangement by which they were to clandestinely get the daughters of Mr. Fuller away from their home, meet them at a certain point and convey them to a neighboring village to some festivity. This was attributed by deceased and Baker to appellant, and caused considerable talk in the neighborhood, and finally led up to this difficulty. On the evening of the difficulty it seems that Dr. Fuller and deceased, Blackshear, instead of following their usual route home from the little town of Attoyac, took the path that led from the business houses towards the residence of appellant, stopped en route, taking their seat upon the log, where appellant found them as he was en route home late in the evening. The difficulty came up at once. The testimony in regard to how it did arise is widely variant. We are treating it from the standpoint of the defense. Under that theory the deceased brought on the difficulty, and used his pistol as a bludgeon, striking appellant over the head several severe blows, causing the blood to flow very freely, and calling for the attention of a surgeon for some days. Dr. Fuller, under defendant's theory, participated in this attack, at least was aiding and encouraging the deceased in the assault, and when appellant undertook to draw his pistol to defend himself, Dr. Fuller forbid his pulling it, accompanied by threats to take his life. The court charged self-defense alone from the standpoint of the attack by deceased. This theory of the law should have been given from the standpoint of a combined attack by deceased and Dr. Fuller. There is testimony back of this difficulty, tending to show that this matter had been discussed and preparation made for this difficulty that evening, on the part of deceased, Dr. Fuller, and Eugene Baker. These matters were issues in the case, and should have been fully submitted on the behalf of the defendant. It is not necessary to cite authorities.

The court limited the right of self-defense by a charge on provoking the difficulty. We do not believe the issue of provoking the difficulty is suggested. It is not necessary to go into a detailed statement of

this record in regard to these matters, as it is very voluminous. Taking the testimony of Dr. Fuller, the first witness for the State. After locating the parties, and the approach of appellant where he and deceased were, he says: "The first words I heard passed were, that I heard defendant say to Eddie, 'May be you will call me a damn liar again,' and caught Eddie (deceased) in the collar or about the collar, I am not certain; and then I heard Eddie say, 'Turn me aloose, or I will hurt you.' I think Eddie said this to him three times; Eddie told him if he did not turn him loose, he would hurt him. Charley appeared to me to be choking him. Then Eddie pulled his pistol and began hitting defendant on the head with it and struck defendant several times on the head, could not say how many times; but about this time John Hargis ran up, and I tried to keep John back, from interfering, and in doing so I tripped John Hargis up and he fell to the ground, and then Eddie stepped off from Charley about ten or twelve feet, still having his pistol in his hand. Defendant then pulled his pistol, and the witnesses differ as to the position deceased held his pistol at the time of the fatal shot—some of them state that he was pointing the pistol at appellant or in the act of bringing it to a level. This is the State's view of this difficulty. This does not suggest the issue of provoking a difficulty on the part of appellant. It is not necessary to quote the testimony relied upon by appellant, but it makes a clear case of self-defense, unaccompanied by provocation.

Appellant contends that he should have been permitted to prove that he did not tell Fuller that Eugene Baker and deceased were to carry his girls to the little village of Chireno. In this appellant is correct. This testimony was clearly admissible. The whole difficulty grew out of the report imputed to appellant in regard to Eugene Baker and deceased seeking to clandestinely get Fuller's daughters away from home at night and accompany them to the little town of Chireno. Evidence was introduced to show that appellant was the author of the statement: the dying declarations made that prominent. Appellant offered the testimony of Fuller and Cauthern to show that he did not start the report. We understand that whatever material facts are introduced in evidence that tend to affect the issue, the opposite side has the right to deny or contradict that testimony, showing its falsity or breaking its force and effect in any legitimate way. This testimony under the circumstances detailed by this record, should have been admitted.

Witness Dr. Fuller was permitted to testify that the pistol used by deceased was unloaded. Objection was urged to this because this was not known to appellant, and that his right of self-defense could not be impaired by proving facts of this character that were unknown to him. We believe this contention is correct. Everett v. State, 30 Texas Crim. App., 682; 18 S. W. Rep., 674; Adams v. State, 44 Texas Crim. Rep., 64; 5 Texas Ct. Rep., 32.

There is an urgent insistence for reversal in regard to the empanel-

ment of a certain juror. This will not occur upon another trial, we pretermit a discussion of the subject.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*