JIM LILES v. THE STATE.

No. 470.   Decided February 23, 1910.

**1.—Rape—Evidence—Influencing State's Witness.**

Where, upon trial for assault to rape, the evidence showed that the prosecutrix was a child of tender years, and that her mother had testified that she noticed nothing unusual about her daughter immediately after the alleged rape; and it was further shown that a relative of the prosecutrix came to her house after the alleged offense, and who had great influence over prosecutrix, and was inimical to defendant, it was reversible error not to permit defendant to show that the said relative had urged prosecutrix that when she got on the witness stand she must swear enough to put defendant in the penitentiary.

**2.—Same—Evidence—Conclusion of Witness.**

Upon trial for rape it was reversible error to permit a State's witness, who had testified that he tracked a mule to where he had heard the crying of a child the evening before, to further state that when the witness got there on the ground he saw a place where some one had sat or wallowed on the ground; this was a conclusion of the witness and inadmissible.

Appeal from the District Court of Palo Pinto.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of aggravated assault; penalty a fine of $100.

The opinion states the case.

*J. T. Daniel,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for aggravated assault with a penalty of thirty days confinement in the county jail and a fine of $100.

The appellant was indicted for assault to rape upon a girl under the age of fifteen years.   The prosecutrix, Annie Lee Liles, testified that she was ten years old past; that she knew the defendant; that

some time in the year 1909, and before the bill of indictment was returned, her mother sent her up in town to deliver a letter to her uncle; that this was in Mineral Wells, Texas, and that after she had delivered the letter she went to the Jew stand; that the defendant came up riding a mule and asked her if she wanted to see the picture show; that she did not wish to go to the show, but defendant got her to go anyhow; the defendant took her up behind him on the mule and started towards home; that her home was on East Throckmorton Street and on the north side of the railroad; that they crossed from the south side of the railroad to the north side, and when they had gotten in front of Lotspietch's house the defendant turned off of the road; that she was riding behind him astride on a mule; that this was between 8 and 9 o'clock at night; that when they got to a bushy place, she testifies, the defendant pulled her off of the mule and wanted her to sit in his lap. Witness says she refused; that the defendant then took hold of her and threw her down on the ground, and that when he threw her on the ground he got down on her and tried to pull up her clothes and when he did that, witness said, she was slapping him in the face; that when he was down on her he got out his private parts; that she did not know whether he touched her or not; that she was crying and slapping him all the time; that appellant asked the witness if it hurt her when she was slapping him; that he told her to hush and tried to unbutton her drawers; that he tried to get her legs apart but she would not let him. This is a sufficient statement of the case to show the points indicated. However, the testimony further showed that they arrived at her mother's house between 8 and 9 o'clock, and that the witness' mother was sitting out on the porch and the appellant remarked that he had brought her little girl home, and the mother testified on the trial that she noticed nothing unusual about her daughter when she came home that evening; that she never learned anything about it until about three weeks, and when she first asked her little girl about it the girl denied it and said there was nothing of it. About July 4 a niece of Mrs. Liles, by the name of Mrs. Montana Scott, came to the home of prosecutrix and immediately thereafter this prosecution was instituted. The testimony discloses that Mrs. Scott was very unfriendly towards the appellant and that she exercised some influence over this little girl.

1. In this state of the record and while the prosecutrix was on the stand testifying she was asked the following questions on cross-examination: If she knew Montana Scott, and if Montana Scott lived at the home of the witness, and if Mrs. Montana Scott did not tell her, the witness, to swear enough when she went on the witness stand to put "old Jim," meaning defendant, in the penitentiary? The witness admitted that Mrs. Scott was with her a great deal. This witness, if permitted, would have answered this question that Mrs. Scott told her this. The district attorney objected to this testimony because the same was immaterial and the court sustained the objection, and to

this ruling of the court the defendant excepted. In this, we think, the court was in error. We think that the appellant was entitled to prove, if he could, that Mrs. Scott was inimical to him, and that she was intimate and had a great influence over this child, and also to prove, if he could, that Mrs. Scott had told this child that when she got on the stand to swear enough to put him in the penitentiary. The jury was entitled to this testimony in view of the peculiarity of this case. The testimony of the mother rather indicates that no such thing occurred as this child testified to. The mother says the child denied it to her; she testified that she saw no evidence, when the child got home that night, of anything wrong having occurred between her and the defendant. Therefore, the appellant would have been entitled to prove if he could that parties who were his enemies were exerting an influence over the child and trying to induce her to swear enough against him to put him in the penitentiary. In cases of this character, where a grown man is charged with an assault upon a child, the very accusation arouses the indignation of all good-minded people. Hence, the trial court should exercise great care to see that there is a fair and legal trial and to exclude all testimony not bearing upon the case which is liable to inflame the minds of the jury, and to open wide the door and let in all the testimony that would throw light upon the transaction and show a want of foundation for the charge against the appellant. In view of the peculiar attitude of this case and of the testimony, both for the State and the appellant, we think the appellant was entitled to this testimony, and if the appellant could show that Mrs. Scott was an enemy of his and that she exerted influence over this child greater than that of her mother, and that she had used persuasion to induce the child to swear to facts that would put the appellant in the penitentiary, most certainly he was entitled to this testimony. We think the court erred in not allowing full scope to the appellant in the examination of this witness along this line.

2. On the trial of the case the State placed upon the witness stand one Dudley Lotspietch, who testified that he tracked a mule to where he heard the crying and there was a place there on the ground where they had sat or wallowed on the ground. This witness further testified that he also saw where the mule had stood for some time and then the mule moved away from the place where this seemed to have occurred. The appellant objected to the witness being permitted to state that he saw where the parties sat o    allowed, as this was a conclusion formed in the mind of the witr      arising from physical facts, and that he should have been requir      ,o state the facts and allow the jury to draw the conclusion as to    .ether anybody sat down or wallowed there. This witness said t¹     on the night of the alleged assault, or on one Saturday night, h      w the appellant come by his house, and that it was dark and th     .iere was a girl or woman behind him on a mule; that the mul       .is black, but he could not tell whether the people were white or      к, and after they passed by his house a little

distance, he, being out in the yard praying, heard someone crying like a little girl, and that this lasted about fifteen minutes; that he did not go and try to make any discovery as to what it meant and did not know what the trouble was; that he went down there the next morning to the place where this occurred and saw tracks of a mule and where parties sat down or wallowed. We are inclined to hold that this testimony was objectionable. The witness should have stated facts. If there was any imprints upon the ground he could have told the jury of these imprints; if there were tracks he could have been permitted to tell about the tracks, whether by persons with bare feet or wearing shoes, whether by men or by children, etc., but to permit him to say that he saw where people had sat or wallowed, we think was highly prejudicial in this case and the court erred in permitting this testimony to go before the jury. In this character of cases courts can not be too careful to safeguard every right of the appellant and see that the trial is legal in all of its aspects.

There are other grounds complained of, but as they are not likely to occur upon another trial, they will not be considered. We do not think that the charge of the court is subject to the criticism made against it in this case.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE.—I agree to the first paragraph of the opinion, and that for this error the case should be reversed.

As to the other matter I am not sure, but that the ruling of the court could be sustained on the ground that the evidence objected to was but a shorthand rendering of the facts, and that in any event where opportunity was given to fully develop the facts that no substantial injury was shown.