FELIPE FLORES v. THE STATE.

No. 15575.   Delivered November 9, 1932.
Rehearing Denied January 11, 1933.
Reported in 55 S. W. (2d) 822.

The opinion states the case.

*Chas. Owen* and *Theodore Andress,* both of El Paso, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for life.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed John H. James by shooting him with a pistol.

The homicide occurred about seven o'clock in the evening at the store of the deceased and his sons-in-law. On the day of the homicide Pino Moreno, Jose Leon, and appellant left Las Cruces, New Mexico, in a green Chrysler automobile owned by appellant, and drove to El Paso, which is approximatelly forty miles from Las Cruces. After eating supper in El Paso, appellant and his companions started on the return trip to Las Cruces. When they reached a point in the vicinity of deceased's store they stopped the car. Immediately thereafter they drove to the front of deceased's store, and stopped. Moreno and Leon went inside, and pretended to purchase a large amount of groceries, telling the proprietor that they were in charge of a ranch in the vicinity and needed supplies for their workmen. Most of the time appellant sat in his car in front of the store. A part of the time the motor was running. Deceased came outside and had a conversation with appellant regarding the purchase of gasoline and oil. He then re-entered the store. In the meantime Moreno and Leon carried some of the groceries to the automobile. Shortly thereafter they returned to the store with appellant. At this time deceased's son-in-law was standing behind the counter a short distance from deceased, and Mr. Henley, who was also interested in the store, had entered the little post office on the opposite side of the store. When the parties entered the store, Moreno exhibited a pistol and ordered deceased's son-in-law to "stick 'em up." Leon directed a pistol at Mr. Henley, firing a shot at him after a scuffle between the parties and deceased. According to the witnesses for the state, appellant and his two companions had pistols out at the time they came into the store. Several shots were fired, and when the firing had ceased deceased was found to be mortally wounded. Appellant and his companions had guns of different makes and caliber. The evidence tended to show that the seven bullets accounted for were all from the same gun. Further, the physical facts tended to show that appellant's gun was not fired. After the shooting, appellant and his companions left the scene of the homicide with the groceries they had placed in the car, and shortly thereafter were taken into custody near the town of Las Cruces by New Mexico officers. At the time the homicide was committed an automobile belonging to one of the

parties in the store was parked near appellant's car. The owner of the car had returned from El Paso about an hour before the shooting and left her car in front of the store. At the time she parked the car it was in good running order. About two hours after the homicide it was discovered that the car would not run; it appearing that it had been tampered with in such manner that the motor would not start. Appellant and his companions did not pay for the groceries they carried away.

Prior to appellant's trial, Moreno and Leon had been convicted and condemned to confinement in the penitentiary for ten years and life, respectively. When appellant was placed on trial, both Moreno and Leon testified on behalf of the state. Their testimony was to the effect that the entire scheme of the robbery was concocted by appellant; that he furnished them with the guns that were used on the occasion of the homicide; and that they were at all times acting under appellant's direction.

Testifying in his own behalf, appellant contended that he took no part in the attempted robbery and the resulting homicide. He testified, in substance: That he did not know that Moreno and Leon were armed with pistols on the night in question and that he had no knowledge of their unlawful purpose when they entered the store; that on the evening of the homicide he had started to El Paso to get an ice box and had invited Leon to accompany him there to assist him in loading and handling the ice box; that as they were about to leave Las Cruces, Leon suggested that Moreno be permitted to accompany them; that upon reaching El Paso they did not get the ice box for the reason that it could not be placed in the car; that he left the parties in the car in El Paso for the purpose of eating supper, and that when he returned he found Leon examining his (appellant's) gun, which he had left in the pocket of his car after an unsuccessful attempt to exchange it with a friend in Las Cruces for a shotgun; that he had forgotten to remove the gun before coming to El Paso; that on the return trip towards Las Cruces one of his companions requested that he stop near the store where the homicide occurred; that after he stopped his car his companions went into the store on several occasions; that their peculiar actions aroused his suspicion; that they tried to borrow money from him or to get him to stand good for the groceries they had purchased; that after they re-entered the store he followed them for the purpose of seeing what they were doing; that as he entered the store the shooting began; that he did not participate in the shooting in any way; that

after deceased had been killed his (appellant's) companions jumped in the car with guns in their hands and forced him to drive away.

Bill of exception No. 1 presents the following occurrence: Approximately an hour before the homicide one of the occupants of the store had driven her car from El Paso and parked it in front of the store, where it remained until about two hours after the homicide. When appellant drove to the store he stopped his car near this automobile. At the time the owner of the car had parked it there it was in good running order. About two hours after the homicide the car could not be moved into the garage because wires had been disconnected from the distributor. There was no witness, either for the state or appellant, who claimed to have observed either appellant or his companions working on or tampering with the car. Appellant objected to the proof touching the condition of the car on several grounds. The opinion is expressed that the objection was not well taken. In the light of all the evidence, appellant had a motive for tampering with the car. He was preparing to commit the offense of robbery, and it was to his advantage to escape without detection. He had the opportunity to tamper with the car. He remained near it in his car while his companions entered the store. With an automobile in good running condition available, immediate pursuit and capture was probable. We quote from Branch's Annotated Penal Code, sec. 97, as follows: "Testimony which isolated from the other facts in the case would be irrelevant may become relevant when viewed in the light of and in connection with other testimony adduced on the trial."

The fact that it was possible that the automobile had been tampered with by some other person would, under the circumstances, relate to the weight of the testimony, but would not be legal ground for its rejection. See Haley v. State, 84 Texas Crim. Rep., 629, 209 S. W., 675, 3 A. L. R., 779; Baines v. State, 43 Texas Crim. Rep., 490, 66 S. W., 847; Doss v. State, 50 Texas Crim. Rep., 48, 95 S. W., 1040; Rucker v. State, 51 Texas Crim. Rep., 222, 101 S. W., 804; Liles v. State, 58 Texas Crim. Rep., 310, 125 S. W., 921; Liles v. State, 62 Texas Crim. Rep., 32, 135 S. W., 1177; Pinkerton v. State, 71 Texas Crim. Rep., 195, 160 S. W., 87; Michie on Homicide, vol. 1, p. 819, sec. 170 (41).

Bill of exception No. 2 complains of the action of the court in refusing to give appellant's special requested instruction to the effect that the evidence showing that appellant had been convicted of a liquor violation in New Mexico could only be con-

sidered for the purpose, if at all, of affecting appellant's credibility as a witness. Prior to the time appellant took the witness stand, and while the state was introducing its testimony in chief, the accomplice witness Moreno was placed on the witness stand by the district attorney. Upon the direct-examination of this witness, the state elicited from him, without objection on the part of appellant, that shortly before reaching the scene of the homicide appellant, Leon, and he drank the remainder of a pint of intoxicating liquor which appellant had procured in El Paso. Upon cross-examination of the witness appellant's counsel asked the witness if he did not know it was a fact that appellant had not been drinking for thirty days. The witness answered that he did not know. In response to appellant's question, he then testified: "I know Flores (appellant) had been given a suspended sentence in Las Cruces about some liquor; I haven't seen him drink since that time. But on this occasion he produced a bottle and says 'Boys take a drink.' It was a full bottle, pint bottle, white bottle." Bearing in mind that the state had not questioned any witness concerning appellant's conviction in New Mexico in a liquor case, and that appellant brought the matter out in his cross-examination of the witness Moreno, it is observed that when appellant took the witness stand in his own behalf, he testified, in response to questions by his counsel, as follows: "Before we got to Conutillo Pino Moreno passed me a bottle of sotol. I didn't drink, at that time I had quit drinking, I had a suspended sentence at Las Cruces for ninety days. Before that I had been convicted on a liquor charge at Albuquerque and given eight months and a hundred dollar fine, that was liquor charge, that was in 1929, I think, I am not sure. It was in December I got a suspended sentence at Las Cruces, the judge asked me if I would quit drinking and he gave me ninety days suspended sentence and one hundred dollar fine. I told the judge I would quit and I did quit. From that time up till I was arrested I didn't drink. Pino Moreno was the one that offered me liquor as we were going up the valley and I told him I do not want no sotol. I am not sure how much liquor they had, probably a pint, probably more, probably less, I saw the bottle, both Pino Moreno and Leon were drinking out of it. They killed the bottle over there before we got to the store, both of them, I mean they drank it up."

Upon cross-examination, after appellant's counsel had elicited the foregoing testimony, the district attorney asked appellant the following question: "Then you admit that you were

convicted and sentenced to the penitentiary in New Mexico for the violation of the liquor law?" Appellant replied that he had been convicted twice on liquor charges.

It was apparently the state's theory that, in encouraging his coconspirators to commit the offense, appellant furnished them intoxicating liquor immediately prior to the robbery and homicide. Appellant made no objection to this testimony. In order to meet the proof of the state touching the matter, appellant testified that he had not been drinking liquor for several months, and assigned as his reason the fact that he had already been convicted on liquor charges and had promised the judge sentencing him not to drink any more. Thus he sought to weaken the force of the testimony of the state touching the facts and circumstances tending to show a conspiracy to rob and that he was directing the movements of his coconspirators. In other words, appellant sought by this testimony to show the falsity of the testimony of the accomplice witnesses touching the conspiracy and his (appellant's) conduct in relation thereto. Manifestly appellant introduced the evidence in question under the general rule that whatever material facts are introduced which tend to affect the issue, the other side has the right to deny, contradict, or explain such testimony, showing its falsity, or breaking its force and effect in any legitimate way. Branch's Annotated Penal Code, sec. 97; Roberts v. State, 48 Texas Crim. Rep., 378, 88 S. W., 221. The opinion is expressed that, under the circumstances, the court was not in error in declining to limit the testimony as requested by appellant. In reaching this conclusion we have taken note of the general rule that when there is introduced evidence of another offense which might be improperly used against the accused, it is proper for the court to forestall such misuse by an appropriate charge limiting the testimony to the purpose for which it was admissible. Land v. State, 93 Texas Crim. Rep., 470, 247 S. W., 554. Also we have taken note of the fact that the testimony was usable beyond the limitation appellant sought to have placed upon it.

Bill of exception No. 3 recites that Leon and Moreno, the accomplice witnesses, testified for the state, notwithstanding the fact that they had been convicted and sentenced to confinement in the penitentiary for the commission of the identical offense for which appellant was on trial; that after the conclusion of the evidence, and after the court had submitted his charge, appellant presented his written requested instruction in which the jury would have been advised that they could not consider the testimony of said witnesses for any purpose. The witnesses

were competent. In Spann v. State, 116 Texas Crim. Rep., 268, 32 S. W. (2d) 455, 457, in opinion on motion for rehearing, this court, speaking through Judge Lattimore, used language as follows: "The fact that state witness Wright was a convict did not disqualify him from giving testimony, chapter 13, section 1, Acts 39th Leg. (1926) First Called Sess., p. 20 (Vernon's Ann. C. C. P., art. 708) amending Acts 39th Leg. (1925) c. 27, section 1, unless it be made to appear affirmatively that such disability attached by virtue of a final conviction for a felony prior to the passage of said act above referred to."

In the present case the conviction of the accomplice witnesses was subsequent to the taking effect of the act referred to in the above quotation. In Stanley v. State, 120 Texas Crim. Rep., 450, 48 S. W. (2d) 279, it was held that, under the act in question, only two classes of persons were excepted from those generally competent to testify; namely, insane persons and children, when shown to be comprehended by the terms of the exceptions. It was expressly held that persons convicted of felony and incarcerated in the penitentiary were competent to testify. In Fitzgerald v. State, 118 Texas Crim. Rep., 64, 39 S. W. (2d) 47, the court approved the holding in Spann v. State, supra, and, speaking through Judge Lattimore, held that any convict is competent to testify as a witness, notwithstanding the fact that he has not been pardoned, provided he was convicted subsequent to the taking effect of the statute in question. Appellant urges that our reasoning in Fitzgerald v. State, 118 Texas Crim. Rep., 61, 38 S. W. (2d) 329, is not sound, in that we assume in the opinion that the Legislature is without power to say that the disability shall attach for a limited time, and full competency be restored without executive intervention after the expiration of such time. We think appellant's criticism well founded. However, we are of the opinion that our conclusion that convicts are competent witnesses was correct.

Failing to find error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

HAWKINS, J., not sitting.

#### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—It is insisted that we were in error in holding competent as witnesses two parties who were prin-

cipal offenders with appellant in this case, and who had each pleaded guilty to the felony involved, and at the time used as witnesses were in the El Paso county jail waiting for some penitentiary agent to come for them. Appellant urges that the case of Jones v. State, 117 Texas Crim. Rep., 8, 36 S. W. (2d) 736, holds contrary to the cases cited in our opinion, as supporting the proposition that the convict witnesses were competent. We do not understand what was said in the Jones case, supra, as does counsel for appellant. We there held that Jones, having admitted on the witness stand that he had been convicted of a felony thirty years prior, would ipso facto be an incompetent witness, unless a pardon had followed said conviction. A conviction of a felony thirty years ago would antedate the passage of the law by the Thirty-ninth Legislature, amending article 708, C. C. P., under which amending statute we held parties convicted since its enactment competent witnesses. In Underwood v. State, 111 Texas Crim. Rep., 124, upon what we deemed sound reason, we held that the Legislature could not, by the passage of such amending act, usurp executive function and thereby pardon and make a competent witness of one whose disability attached by reason of a felony conviction prior to the passage of such amendment; hence the lack of appreciation here, of what we said in the Jones case, supra.

We find no room for criticism of appellant's attack on the form or verbiage of said amending act, and can ourselves see no reason for the care shown in subdivision 3 of section 1 of said act, in setting forth specific instances in which convicts or persons in jail might testify, but since by such act old article 708, C. C. P., was repealed, upon which alone rested the incompetence of convicts as witnesses, we were thus left without any statute making such convicts incompetent. We are in the same condition now. In addition to the above, we observe that the emergency clause of said amending act specifically states that there is no good reason why convicts might not testify. We see no escape from the conclusion announced in this and cited cases, that these witnesses, and all others convicted since the passage of the amended act, are competent witnesses. With the wisdom of the rule we have nothing to do. It is the law as now written.

The motion for rehearing will be overruled.

*Overruled.*