## W. I. HALEY v. THE STATE.

### No. 5270. Decided February 26, 1919.

**1.—Murder—Bills of Exception—Evidence.**

Bills of exception to evidence should be so drawn as to disclose the relation of the facts to which they refer to other facts in the case, and where the evidence is circumstantial, negative their .relevancy as links in a chain of circumstantial evidence, when considered in connection with other circumstances.

**2.—Same—Circumstantial Evidence—Rule Stated.**

In a case depending upon circumstantial evidence it is necessary only, to render it admissible, that it tends to prove the issue or constitute a link in the chain of proof, and it is not to be rejected, though standing alone it might not justify a verdict. Following Preston v. State, 8 Texas Crim. App.; 30, and other cases.

**3.—Same—Evidence—Circumstances.**

Where, upon trial of murder, the evidence was wholly circumstantial, there was no error in admitting testimony that a shotgun was found, at defendant's place of business, and that subsequent to the·homicide it bore evidence of recent discharge. Following Baines v. State, 43 Texas Crim. Rep., 490.

**4.—Same—Evidence—Automobile Track—Circumstances.**

Upon trial of murder, depending on circumstantial evidence, there was no error in admitting in evidence that defendant owned an automobile in which he drove on the night of the homicide and which made certain imprints on the ground which were found near the scene of the homicide, ánd the fact that it was possible that these tracks might have been made prior to the homicide or by another automobile would only relate to the weight of the testimony, but would not be legal ground for its rejection. Following Baines v. State, 43 Texas Crim. Rep., 495, and other cases.

**5.—Same—Evidence—Identification of Automobile.**

Where, upon trial of murder, where it had been shown that there were found on the ground a short distance from the scene of the homicide certain automobile tracks which corresponded with those made which was owned by the defendant, there was no error in introducing testimony to identify the defendant's car.

**6.—Same—Evidence—Footprints.**

Upon trial of murder, depending upon circumstantial evidence, there was no error in admitting testimony that footprints were found in the vicinity of the homicide, and that defendant's shoes were identified and compared with ·these tracks. Following Weaver v. State, 43 Texas Crim. Rep., 340, and other cases.

**7.—Same—Allusion to Defendant's Failure to Testify—Argument of Counsel.**

Where the State's· counsel in his argument stated that the State placed certain witnesses on the stand to show that guilt did not point to them, but

that the defendant's counsel had failed to put the defendant on the witness stand to deny his guilt, the same was reversible error. Following Avilla v. State, 32 Texas Crim. Rep., 136, and other cases.

### 8.—Same—Evidence—Motive.

Where, upon trial of murder, the State's theory was that the wife of the deceased had been criminally intimate with the defendant and that this was the motive for the murder, there was no error in introducing testimony of the conversations between them disclosing these illicit relations, etc. Following Rice v. State, 54 Texas Crim. Rep., 149, and other cases.

### 9.—Same—Evidence—Other Offenses.

Where, upon trial of murder, depending entirely upon circumstantial evidence, the State sought to show and introduced evidence that some ten months prior to the homicide in the instant case the defendant had killed his wife by administering poison to her, as a link in the chain of evidence, but to justify the admission of this testimony it should be shown beyond a reasonable doubt that defendant's wife died from poison knowingly administered by him with intent to destroy her, before such testimony could be introduced as a link in the chain of testimony to connect the defendant with the murder in the instant case, and should be properly limited by the court's charge.

Appeal from the District Court of Kaufman. Tried below before the Hon. Joel R. Bond.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Williams, Puckitt & Horty* and *Martin & McDonald,* for appellant.— On question of other offenses: Somerville v. State, 6 Texas Crim. App., 437; Barkman v. State, 52 S. W. Rep., 69; Smith v. State, 44 Texas Crim. Rep., 81; Pace v. State, 58 id., 90; Powdrill v. State, 62 Texas Crim. Rep., 442, 138 S. W. Rep., 114; Menefee v. State, 67 Texas Crim. Rep., 301, 149 S. W. Rep., 138; Orner v. State, 78 Texas Crim. Rep., 415, 183 S. W. Rep., 1172; Sapp v. State, 80 Texas Crim. Rep., 363, 190 S. W. Rep., 489.

On question of allusion of defendant's failure to testify: Hunt v. State, 28 Texas Crim. App., 149; Jemison v. State, 79 Texas Crim. Rep., 313, 184 S. W. Rep., 807.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of admitting tracks and other circumstances, cases cited in the opinion.

MORROW, JUDGE.—This conviction is for murder, the punishment being fixed at confinement in the penitentiary for twenty years.

The State's theory is that the deceased was assassinated. The evidence relied upon by the State is wholly circumstantial. The deceased resided in the country, and early in the morning a neighbor went to his house and found his body in his yard near the door of his garage. The body was cold and stiff, and apparently the deceased had been dead six or eight hours. There were a number of buck-shot wounds in his face and head. As a motive for the homicide the State advanced the

theory, supported by the testimony of the wife of deceased, that she and appellant were criminally intimate; that she on the day preceding the homicide had told the appellant that their intimacy must cease, and he had declared his determination to have her.

There are a number of bills of exception complaining of the admission of evidence. These bills complain of the introduction of specific parts of the evidence, but are not so drawn as to disclose the relation of the facts to which they refer to other facts in the case, nor to negative their relevancy as links in a chain of circumstantial evidence when considered in connection with other circumstances. In a case depending upon circumstantial evidence it is necessary only, to render it admissible, that it tends to prove the issue, or constitute a link in the chain of proof, and it is not to be rejected, though standing alone it might not justify a verdict. In such cases incidents may be legitimate evidence which would be deemed irrelevant in a case depending upon direct and positive testimony. Preston v. State, 8 Texas Crim. App., 30; Washington v. State, 8 Texas Crim. App., 377; Sims v. State, 10 Texas Crim. App., 132; Langford v. State, 17 Texas Crim. App., 445; Vernon's Crim. Stats., vol. 2, p. 595, note 18. Under these rules the bills show no error wherein complaint is made of the fact that a shotgun was found at appellant's place of business, and that subsequent to the homicide it bore evidence of recent discharge. Wharton on Homicide, p. 943; Baines v. State, 43 Texas Crim. Rep., 490; Michie on Homicide, vol. 1, p. 821, sec. 170.

There was evidence that late in the evening preceding the homicide the deceased was in the village of Forney, at which the appellant lived, and near which the deceased lived; that about 9 o'clock the same night an automobile passed along the road near the scene of the homicide. There was evidence that appellant owned an automobile; that the tire on one side was smooth and on the other a Diamond tread. There were found on the ground a short distance from the scene of the homicide tracks made by an automobile with a smooth tire on one side and a Diamond tread tire on the other. There was evidence that on the same night that the homicide took place appellant was recognized driving his car. The imprint made by the Diamond tread tire on the mud near the scene of the homicide was preserved and introduced in evidence, and plaster cast of the tire on appellant's car was also made and proof introduced that the tread on his car and the impression on the mud were identical in size and shape. The fact that it was possible that the track may have been made prior to the homicide, or that it might have been made by an automobile other than that of appellant, would, under the circumstances, relate to the weight of the testimony, but would not be legal ground for its rejection. Baines v. State, 43 Texas Crim. Rep., 495; Doss v. State, 50 Texas Crim. Rep., 49; Rucker v. State, 51 Texas Crim. Rep., 222; Liles v. State, 58 Texas Crim. Rep., 310; Liles v. State, 62 Texas Crim. Rep., 34; Pinkerton v. State,

71 Texas Crim. Rep., 195, 160 S. W. Rep., 87; Michie on Homicide, vol 1, p 819, sec. 170 (41).

The bills of exception complaining of the identification of the car belonging to appellant present no error.

The complaint of the evidence that footprints were found in the vicinity of the homicide, and that appellant's shoe was identified and compared with the tracks is not well founded. Branch's Ann. P. C., p. 81; Weaver v. State, 43 Texas Crim. Rep., 340. Proof of tracks and other matters found at or near the scene of the homicide was legitimate. Michie on Homicide, p. 829, sec. 171 (1¾b); Tate v. State, 35 Texas Crim Rep., 231.

The trial court should have granted a new trial because of the remarks of the county attorney. Among other things, it appears from the bill he said, referring to counsel for appellant: "You said the facts of this case point just as much to the guilt of these men, Terry McKeller and John McKeller, as Irvin Haley. The State has seen fit to put the two McKellers upon the witness stand to deny their guilt, but you did not put Mr. Haley upon the witness stand to deny his guilt." There were other similar remarks not necessary to quote. Our statute, art. 790, C. C. P., provides: "A failure of any defendant to testify in his own behalf shall not be taken as a circumstance against him, nor shall the same be alluded to or commented upon by counsel in the cause." A disregard of this command of the statute has been from the date of its passage uniformly held an imperative cause for reversal. Avilla v. State, 32 Texas Crim. Rep., 136; Vernon's Texas Crim. Stats., vol. 2, p. 716, note 29, and cases cited.

The conversations between appellant and Mrs. Williams detailed by her disclosing his illicit relations with her, his desire that she abandon her husband, her unwillingness to do so, his references to his freedom since the death of his wife, and other matters detailed in her testimony, were relevant and admissible in evidence. Weaver v. State, 43 Texas Crim. Rep., 340; Rice v. State, 54 Texas Crim. Rep., 149.

The State introduced evidence for the purpose of showing that some ten months prior to the homicide in question the appellant had killed his wife by administering poison to her. The admissibility of this testimony is challenged upon various grounds. The manner in which this is presented in the bill of exceptions renders it difficult to grasp entirely appellant's viewpoint, but in view of another trial we express such views as we have formed touching its relation to the case. The evidence showed that appellant's wife died at night. He called a physician and her stepmother, who arrived after her death. According to their statement appellant and his wife came in from a drive; that his wife had been taking some aspirin for neuralgia which she had; that they went to bed, and later she told him to bring her that dose of quinine she got that evening in capsules; that he gave it to her, and after taking it she went to sleep and dozed off, and later she woke him up saying she was feeling bad; that she said she did not need a doctor,

she would be all right, but that she had a convulsion, and he phoned for a doctor, and that she died in his arms. The doctor said he did not remember that the appellant told him how long his wife lived after she complained; that she woke up suddenly and grabbed him; that he had given her some quinine about an hour before the doctor was called. The doctor testified: "In an examination of the body I 'found the lower lip bitten. After that I looked over her arms and portions that were exposed, I think. I think there was some remark made about some splotches on her body. I think, as a rule, pied splotches follow strychnine poisoning. I made no analytical examination of the contents of the stomach; there was no post-mortem examination had." As we understand the record there was no prosecution founded upon this matter. Evidence was introduced, however, on the trial of this case that some time subsequent to the death of Mrs. Haley her stepmother visited the house of appellant and found a bottle marked "strychnine" and talked to appellant about it, and he said he knew it was there; that he had bought it several years ago to kill a dog and had never used it; that she asked him if he did not know that it was half gone, and he replied, no, that it had never been unwrapped. That the bottle was turned over to her husband, and it was introduced upon the trial.

The general rule of evidence is that evidence of extraneous crimes is not received. The reason for its rejection as stated by Mr. Underhill is, "that persons selected as jurors will very naturally believe that a person is guilty of the crime with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character; and it can not be said with truth that this tendency is wholly without reason or justification, as every person can bear testimony from his or her experience, that a man who will commit one crime is very likely subsequently to commit another of the same description. To guard against this evil, and at the same time to avoid the delay which would be incident to an indefinite multiplication of issues, the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial." Underhill on Crim. Ev., sec. 87. If it be assumed that the facts of this case bring it within one of the exceptions to which we will hereafter refer, it is clear that the due administration of justice demands that evidence tending to show appellant's guilt of another crime should not be admitted unless the proof of the other offense is clear. In this case if it is proper for the State to use the alleged fact that appellant poisoned his wife as a circumstance connecting him with the assassination of Williams, it should be shown beyond a reasonable doubt that his wife died from poison knowingly administered by him with intent to destroy her. Applying this principle to the case in hand, we find no satisfactory evidence that the appellant's wife died from poisoning.

"In cases of poisoning, where the symptoms and appearance during

the last illness become controlling facts in determining whether the death was from poison or from disease, the charge is not made out unless the prosecution negative everything but poison as the cause of death. And this they can only do by showing affirmatively that the combined symptoms and the absolutely certain facts with which they are associated are inconsistent with any other disease or ailment." People v. Millard, 53 Mich., 63, 18 N. W. Rep., 562; Wharton, Crim. Ev., vol. 1, p. 162.

The circumstances, especially when taken in connection with the subsequent developments growing out of the present prosecution, surrounded appellant with suspicion connecting him with the death of his wife, but to justify the admission of evidence of another crime, its commission must be proved, and if the State can do no more than supply evidence casting suspicion upon the accused, the evidence should be rejected. We think on the application of this rule the evidence admitted on the subject should have been excluded from the jury. If upon another trial evidence is proffered sufficiently cogent to establish the fact that appellant's wife died from poison, we believe the evidence should be received as coming within that exception to the rule excluding independent crimes which recognizes their admissibility when they are evidence of a systematic plan formed and executed by the accused. This arises from the theory advanced by the State that the appellant, desiring to continue unobstructed his illicit relations with the wife of deceased, formed a plan to remove the obstacles, viz: his own wife and the deceased, Williams, and proof that he killed his wife in pursuance of his purpose to attain the same object which would furnish the motive for the killing of the deceased tended to identify appellant as the slayer of Williams. Concerning the admissibility of similar acts, although they constitute other offenses on the theory that they are part of a design or system, Mr. Wigmore in his work on Evidence, section 104, says: "There is no situation in which a design to do an act would be irrelevant to show the doing of the act." Again, at section 304: "When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's design or plan to do it." "To render them admissible, there must be not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." Thus he says: "To show a plan to rob a safe, the stealing of the key would be relevant; or to show a plan to murder a whole family and obtain their insurance money, the killings of other insured members of the family would be admissible." Precedents from which these general statements of the author are taken will be found at section 363 of the same volume. Among these are cases in which, the plan being to get rid of obstacles to the marriage or association with a particular woman, crimes committed in furtherance of this design have been received as relevant to the issue of identity of the slayer of the deceased in the particular case. See

Stephens v. People, 19 N. Y., 571. Such evidence has often been received in cases of poisoning where the evidence of identity was circumstantial.

If·this evidence is received upon another trial, it should be limited in the charge of the court, and it should be made clear to the jury that it is not to be considered at all against the appellant unless the State had shown beyond a reasonable doubt that appellant's wife died from poison knowingly administered by the appellant with intent to kill her.

Because of the errors pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*