John R. DAGGETT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–01–00558–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 11, 2002.

Rehearing Overruled Feb. 3, 2003.

**446**

Nancy B. Barohn and Ronald P. Guyer, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for State.

Sitting: PHIL HARDBERGER, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

Opinion by: CATHERINE STONE, Justice.

A jury found appellant, John R. Daggett, Jr., guilty of three counts of sexual assault of a child. He presents five issues on appeal. We affirm the judgment of the trial court in all respects.

### FACTUAL AND PROCEDURAL BACKGROUND

In May of 2000, "Brittany"[1] filed a police report with the Castle Hills Police Department. That report alleged that when she was sixteen, she had sex with John Daggett, who owned the restaurant where she worked. She described the encounter to Detective Wayne Davis in considerable detail. She told him that on three separate occasions while she worked the last shift at the restaurant, Daggett, who was not working at the time, contacted her and asked if she wanted to spend the night with him. She waited for him to pick her up at the restaurant where they had alcoholic drinks. They ingested methamphetamine and went to his house. He

---

1. The indictment used the names "Brittany" and "Hailey" instead of the real names of the minor complainants. To protect their identi- ties and for the purpose of uniformity, we will also use those names.

undressed her in his bedroom while pornographic videos were playing. After undressing, he rubbed lubricant on himself. He turned her on to her stomach and entered her from behind. All three times, she noticed that his genitalia were shaved. During the second and third encounters, he wore a cock ring.

The State prosecuted Daggett on three counts of sexual assault of a child stemming from his intercourse with Brittany. Initially, Daggett was charged with a fourth count of sexual assault of a child based on a similar complaint filed with the Castle Hills Police Department by "Hailey," another underage employee at Daggett's restaurant. The court severed that count, and Daggett's trial was based solely on the charges of sexual assault of Brittany. After Brittany testified, the State called Hailey to the stand. Over the objections of defense counsel, Hailey testified that when she was sixteen, she worked the last shift at the restaurant one night when Daggett invited her to his house. She went with him and while there, had alcoholic drinks and became drunk. She went to sleep in his bed, and when he came in the next morning, they had sex. There were pornographic videos playing on the bedroom TV, he rubbed lubricant on himself, turned her on to her stomach, and entered her from behind. She also noted that his genitalia were shaved and that he wore a cock ring.

Daggett later took the stand and, in response to questions about sexual intercourse with Brittany stated, "I would not do something like that," and "I've never done anything of the sort with a 16 year-old girl period." Both in and out of the jury's presence, the trial judge admonished Daggett for providing non-responsive answers, making extraneous comments, and continuing to talk after objections were made. The jury convict-ed Daggett and sentenced him to two years imprisonment on the first count and two years of probation on each the second and third count.

### EVIDENCE OF A COMMON PLAN OR SCHEME

■ In his first issue, Daggett complains that the trial court abused its discretion in admitting Hailey's testimony that she also had sex with Daggett when she was underage. He argues that her testimony does not show a common scheme or plan under Rule 404(b) of the Texas Rules of Evidence. The trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). Therefore, this court will not reverse unless the trial court's decision to admit Hailey's testimony was outside the zone of reasonable disagreement. *See Green v. State*, 934 S.W.2d 92, 102 (Tex.Crim.App.1996).

Rule 404 of the Texas Rules of Evidence excludes character evidence to prove conduct in conformity. *See* TEX.R. EVID. 404(a). Under Rule 404(b), however,

> (e)vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

TEX.R. EVID. 404(b). At trial, the State argued that the details of the encounter with Hailey were relevant to show Daggett's common plan or scheme to have sex with his underage employees. Through an oral limiting instruction and in the jury charge, the court instructed the jury to consider Hailey's testimony only if it found beyond a reasonable doubt that she and Daggett had sex, and then only for the

purpose of determining whether Daggett engaged in a common plan or scheme.

In *Garza v. State*, the defendant was convicted of sexual assault and indecency with a child. *See Garza v. State*, 10 S.W.3d 765 (Tex.App.-Corpus Christi 2000, pet ref'd). Garza hired the complainant to clean rooms at the hotel he managed. *Id.* When she was twelve years-old, Garza offered her money to have sex with him, and she complied. *Id.* at 767. The State produced three witnesses who testified that they were sexually assaulted by Garza as minors. *Id.* at 772. The first witness was a thirteen year-old who also cleaned rooms at the motel. She testified that at the age of nine or ten, Garza began touching her inappropriately and exposed his penis to her. *Id.* The second witness testified that at fifteen, she was hired to clean the motel office, and Garza offered her additional money "to go out with him and stuff." *Id.* The final witness testified that when she was eleven, she worked for Garza at a store he operated next to the motel. She testified that he paid her money to remove her clothing; he would then undress and get on top of her. *Id.*

■ The appellate court affirmed on the ground that the trial court could have concluded that evidence of these extraneous offenses was logically relevant and admissible to show a common scheme or plan. *Id.* Like Garza, Daggett used his position to hire underage girls. He created opportunities to be alone with them, and then committed sexual acts to which the girls were too young to consent. The similarities between the testimony given by Brittany and Hailey is logically relevant and detailed enough to constitute admissible evidence of a common plan or scheme.

In his brief, Daggett argues that the trial court erred in admitting Hailey's testimony before he opened the door by denying intercourse with underage employees.

For support, he relies on this court's opinion in *Cruz v. State*, 737 S.W.2d 74 (Tex. App.-San Antonio 1987, no pet.). Cruz was convicted of sexual assault of his minor biological daughter. *Id.* at 77. After Cruz's biological daughter testified, Cruz's minor stepdaughter testified that Cruz attempted to molest her on two occasions. *Id.* This court held that the trial court reversibly erred in admitting the stepdaughter's testimony when the defendant had neither undermined the complainant's credibility nor opened the door by denying the act. *Id.* at 78.

■ Two years after *Cruz* was decided, this court held that if evidence of an extraneous offense is improperly admitted during the State's case-in-chief, subsequently admitted defense evidence can render the error harmless if the extraneous offense would have properly been admitted as rebuttal evidence. *Macias v. State*, 776 S.W.2d 255, 258 (Tex.App.-San Antonio 1989, pet. ref'd); *see also Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App. 1985). In the instant case, Daggett opened the door during his direct examination when he stated, "I would not do something like that," and "I have never done anything of that sort with a 16 year old girl period." *See Mares v. State*, 52 S.W.3d 886, 890 (Tex.App.-San Antonio 2001, pet. ref'd). Daggett's denials opened the door and made it permissible for the State to call Hailey. Therefore, even if it was error for the trial court to admit this evidence, Daggett's subsequent denials cured any possible harm caused by the admission of this evidence.

■ Daggett also complains that Hailey's testimony was unduly prejudicial and cumulative. The trial court enunciated its reasons for admitting the evidence and found that it would serve to make the common scheme or plan, a fact of conse-

quence, more or less probable. The court also found that there was a limited potential for Hailey's testimony to impress the jury in an irrational way. The court went on to find that the parties did not spend an inordinate amount of time developing her testimony and that the State needed the evidence to prove a fact in consequence. We agree and hold that Hailey's testimony was neither unduly prejudicial nor cumulative. Because the trial court acted within its discretion in admitting Hailey's testimony, we overrule Daggett's first issue.

### ADMONISHING DAGGETT BEFORE THE JURY

 Daggett complains that the trial court fundamentally erred in admonishing him in front of the jury for providing unresponsive answers. He argues that those reprimands infringed on his presumption of innocence and commented on the weight of the evidence. Because these comments are not fundamental error, they require an objection to be preserved for appellate review. *See* TEX.R. EVID. 103(d). Daggett made no objections to the trial court's admonishments, so he cannot raise this issue for the first time on appeal. *See* TEX.R.APP. P. 33.1. In any event, a trial judge may exercise broad discretion in controlling the courtroom. *See Ex parte Krupps,* 712 S.W.2d 144, 153 (Tex.Crim. App.1986) (Onion, J., concurring). These comments were nothing more than an attempt to control a verbose witness, and were not calculated to convey the court's opinion of the case to the jury. Daggett's second issue is overruled.

### CUMULATIVE EFFECT OF HARMLESS ERRORS

Next, Daggett complains that he was denied a fair trial because of cumulative error stemming from the admission of numerous inadmissible extraneous offenses and bad acts. He claims that the combination of six otherwise harmless errors deprived him of his Due Process rights. The State responds that the cumulative error doctrine is not recognized in Texas. Contrary to the State's assertions, the Court of Criminal Appeals has recognized that, "a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex.Crim. App.1999). Daggett claims that these errors affected his credibility and the credibility of his witnesses. He argues that because this case turned on credibility, the State's improper credibility challenges substantially and injuriously affected or influenced the jury's decision. We disagree and hold that Daggett has not shown that these errors had more than a slight effect on the jury. *See Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000).

 Daggett complains that the jury heard testimony that methamphetamine was seized from his home, even though the court granted his motion to disregard. He then argues that error occurred when the prosecutor asked Daggett, "You're not allowed to be with your daughter by yourself?" and "Would it surprise you that people, including your ex-wife, think you have a drug problem?" even though the court sustained defense counsel's objections. Daggett did not answer these questions, and his counsel failed to pursue the objections to an adverse ruling. Next, he claims that the State improperly impeached Serena Hyde, a defense witness. Daggett's counsel, however, failed to obtain a ruling on the objection to improper impeachment. Even error of constitutional magnitude must be preserved for appellate review. *See Dewberry v. State,* 4 S.W.3d 735, 748 (Tex.Crim.App.1999). Because Daggett's first three complaints of cumulative error are not properly preserved, they present no grounds for review.

The trial court correctly overruled Daggett's complaints regarding improper impeachment of Al Peche. Although the impeaching witness was permitted to testify about Peche's reputation even though she had not heard anything about his reputation in sixteen months, the trial court has broad discretion in admitting evidence. *See Montgomery*, 810 S.W.2d at 391. We cannot say that the trial court's decision to admit this testimony was an abuse of discretion. *Id.* For that reason, it was not error.

■ In his fifth point, Daggett argues that he did not open the door to any questions regarding his drug use. The record reflects differently. Daggett testified that he was a law-abiding citizen, and when questioned about drug use, he stated that he would not do that because it was against the law. His testimony left a false impression with the jury and opened the door to impeachment by testimony that he had been seen using drugs during the time period in question. *See Wheeler v. State*, 67 S.W.3d 879, 885 (Tex.Crim.App.2002). Admitting this evidence was not error.

■ In his final cumulative error argument, Daggett points to the prosecutor's argument that Daggett "raped" young "girls," when he was charged solely with the sexual assault of Brittany. However, Daggett's attorney failed to object to this argument. This error was not properly preserved and it cannot be raised for the first time on appeal. *See Cooks v. State*, 844 S.W.2d 697, 717 (Tex.Crim.App.1992).

After finding that Daggett waived four of the six complaints he raises under the cumulative error section, we cannot say that the remaining two complaints of improper impeachment rise to the level of cumulative error. We therefore overrule Daggett's third point of error.

## ADMISSION OF EXTRANEOUS OFFENSES DURING THE PUNISHMENT PHASE

■ A trial court's decision to admit extraneous offense evidence is reviewed for abuse of discretion. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim. App.2002). This court will reverse only if the decision to admit Daggett's extraneous offenses during the punishment phase was outside the zone of reasonable disagreement. *Id.*

During the punishment phase of trial, the State introduced evidence that Daggett committed the unadjudicated offense of theft by failing to timely return a car he rented from Hertz Rent–A–Car. Daggett testified that he authorized a second driver on the car who failed to return it, the car was recovered seven weeks later, and it only sustained $400 in damage. He also presented evidence that because he rented the car on his American Express card, American Express settled the bill, resulting in nothing more than a violation of the terms of the rental contract. The court also admitted evidence that Daggett committed the unadjudicated offense of child endangerment. When the Castle Hills Police Department executed its search warrant at Daggett's home, no one answered the door. The State offered testimony that the officers executing the warrant broke down the front door and Daggett, who was inside, held his minor daughter in front of him as a shield. Daggett testified that he held his daughter above his head to protect her in the confusion. He argues that the prejudicial effect of admitting these unadjudicated offenses outweighs its prejudicial value.

■ Under TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon 2000), "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extra-

neous crime or bad act that is shown beyond a reasonable doubt.…" The admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000). The policy-based rationale for admitting extraneous offense evidence is the need for a jury to have complete information before attempting to fashion an appropriate sentence. *Id.*

■ The trial court admitted this evidence to give the jury a complete picture of Daggett's history before handing down his sentence. In the instant case, the trial court instructed the jury not to consider the uncharged offenses unless it was convinced beyond a reasonable doubt that the defendant committed the acts. *See Huizar v. State*, 12 S.W.3d 479, 481 (Tex.Crim. App.2000). We cannot say that the trial court acted without reference to guiding rules and principles in admitting this evidence. Even if the trial court erroneously admitted this evidence, Daggett has failed to show any harm from its admission. We therefore overrule Daggett's fourth issue.

### IMPROPER JURY ARGUMENT DURING THE PUNISHMENT PHASE

■ A trial court's rulings regarding improper jury argument is non-constitutional error reviewed under a substantial rights analysis. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected and reversible error is committed when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Morales*, 32 S.W.3d at 867.

■ During the punishment phase of trial, the prosecutor repeated her argument about Daggett "raping" Brittany. Unlike the guilt/innocence phase of the trial, however, defense counsel objected and preserved this error for review. Proper jury argument fits into one of four categories: summation of the evidence; reasonable deductions from that evidence; answers to opposing counsel's arguments; and pleas for law enforcement. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988). To constitute reversible error, the argument must be extreme, manifestly improper, or inject new and harmful facts into evidence. *Id.*

■ Use of the word "rape" mischaracterized the offense for which the jury convicted Daggett. It is not a reasonable, fair, legitimate, and good faith inference. *See Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App.1996). However, the jurors were aware of the elements of the charge of sexual assault of a child. To determine whether the argument resulted in reversible error, the court will apply three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instructions by the judge); and (3) the certainty of the conviction absent the misconduct (the strength of the evidence supporting he conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998).

■ In using the word "rape," the prosecutor exaggerated the facts and the law. However, the record does not reflect and Daggett has not established that the prosecutor's actions had any prejudicial effect on his punishment. The jury found him guilty on all three counts and gave him the minimum sentence of two years probation on two of those counts. Daggett argues that without these comments, his sentence could have been probated on the first count as well. Considering that as recently as October of this year, the Court of Criminal Appeals used the term "statutory rape" to refer to the crime of committing sexual acts with minors, we cannot see

how these comments had a prejudicial effect on Daggett's punishment. *See Salazar v. State,* 86 S.W.3d 640, 645–46 (Tex. Crim.App.2002). The record shows that after the trial court sustained defense counsel's objection, the prosecutor refrained from using the word "rape," stopped discussing the gravity of the crime, and moved into a discussion of Daggett's defenses and excuses. Finally, even absent these remarks by the prosecutor, the evidence supporting the sentence was strong. Although these comments were not proper, they were not harmful. We overrule Daggett's final issue.

Having found no reversible error, we affirm the judgment of the trial court on all issues.