IN THE COURT OF CRIMINAL APPEALS

                                   OF TEXAS

 

                                                                              

                                                               NO.
PD-0503-03



 

 

                                             JOHN R. DAGGETT, JR., Appellant

 

v.

 

THE STATE OF TEXAS

 

 



ON APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

FROM THE FOURTH COURT OF APPEALS

BEXAR COUNTY



 

Cochran, J., delivered the opinion of
the unanimous Court.

 

OPINION

 








Appellant was
convicted of three counts of sexual assault of a child under seventeen.  On appeal, he argued that the trial court
improperly admitted evidence of sexual assault against a second child in
violation of Rule 404(b) of the Texas Rules of Evidence.  The court of appeals affirmed the trial court=s judgment.[1]  We granted review to determine whether
admission of the extraneous offense was error and, if so, whether it was
harmful error.[2]  We conclude that the admission of this
evidence, for substantive purposes, was error, but we remand the case to the
court of appeals to determine whether that error was harmful under the
circumstances.

I.








The present
sexual-assault convictions are based upon proof of sexual intercourse between
appellant and sixteen-year-old Brittany. 
The State=s evidence at trial showed that appellant
owned Capparelli=s, a small Italian restaurant.  Between 1998 and 2001, appellant employed
Brittany and Hailey,[3]
who was also sixteen, as waitresses.[4]  Brittany testified that she and appellant had
engaged in consensual sex on three different occasions.  She described each of these occasions in
detail, and included specifics regarding the layout of appellant=s home (where each
of the three incidents occurred), pornographic videos that appellant played,
appellant=s tattoos, his use of lubricants and
sexual paraphernalia, and the sexual positions she and appellant engaged
in.  

Brittany also
testified that on several occasions she stayed at the restaurant after work
drinking alcoholic beverages with appellant and that she and appellant had Adone speed@ before each of
their sexual encounters.  Finally,
Brittany stated that she never felt pressured or forced by appellant; all of
their activities were consensual.  After
these encounters, she quit working at Capparelli=s and, after
pressing charges against appellant, she got a job at a restaurant next door to
Capparelli=s.

On
cross-examination, Brittany agreed that she was attracted to appellant.  She 
admitted that she had lied to appellant about her age so that he would
hire her, that she had lied to her parents about where she was when she stayed
at the restaurant after hours or went to bars after work, and that she had used
a fake I.D. to get into bars.  

Brittany=s mother then
testified that she made her daughter go to the police after Brittany told her
about the sexual episodes with appellant.








Next, the State,
over appellant=s numerous objections, offered testimony
by Hailey about her sexual relationship with appellant.[5]  The State argued that this evidence was
admissible under Rule 404(b) as showing a common scheme or plan.[6]  The trial court overruled appellant=s objections and
permitted Hailey to testify.  Appellant
then requested that the trial court give the jury a limiting instruction, which
it did: 

You are instructed that if there is any testimony
before you in this case regarding the defendant=s having
committed offenses other than the offense alleged against him in the indictment
in this case, you cannot consider said testimony for any purpose, unless you
find and believe beyond a reasonable doubt that the defendant committed such
other offenses, if any were committed, and even then, you may only consider the
same in determining the common plan or scheme, if any, of the defendant in
connection with the offense, if any, alleged against him in the indictment in
this case and for no other purpose.

 

Hailey testified
that she went to appellant=s home one night
while he was having a party, had several drinks, and then passed out on the
sofa.  She stated that she and appellant
had sex in his bedroom the next morning. 
Like Brittany, Hailey gave a detailed description of appellant=s home, his use of
pornographic videos, lubricant and sexual paraphernalia, appellant=s tattoos, and the
sexual positions she and appellant engaged in. 
Her testimony was remarkably similar to Brittany=s.[7]  Hailey also testified that appellant had
obtained a fake ID for her so they could go to bars together; he drank alcohol
with her at the restaurant and at several bars; he made flirtatious comments
about her attire on numerous occasions; and he threatened to kill her if she
told anybody about their sexual encounter. 








On
cross-examination, Hailey stated that she and Brittany were Abest friends@ and that they
gossiped with each other and with other Capparelli=s employees about
appellant.  Hailey admitted that she told
Brittany=s mother and the
police about her encounter with appellant only because Brittany, when she got
in trouble, told her mother that Ait happened to
[Hailey] too.@

Appellant
testified that he did not have sexual relations with either Brittany or
Hailey.  He denied taking either girl to
bars, but admitted that he had socialized with Hailey at a bar at least once.  Appellant also asserted that he would not
have sex or flirt with a sixteen-year-old girl:

Q: And you heard [Hailey] say that
you were flirtatious with her.  Do you
recall that?

A: No, sir.  I would never do that in my business.  If I did that with employees, I wouldn=t have employees....

 

Q: You don=t remember going in six hours after
you told [Hailey] to go upstairs, and having sex with her for 20 minutes?

A: That did not happen.

Q: Okay.  How do we know?  She said it did.

A: I=m saying that that did not
happen.  I would not do something like
that.  That would be foolish....

 

Q: Any of those other times, were
you making out with Brittany in the front yard?

A: I=ve never done anything of the sort
with a sixteen year old girl period....

 

Q: I mean, [Brittany] described
[the sexual encounter] pretty good, you know. 
It seemed like B

A: A fantasy of a child, basically.

Q: Why is she fantasizing?

A: I have no idea, sir.  I do know what I do, and I do know what my
actions have been.  I am in control of
myself and my thoughts and my own behavior. 
I absolutely would not do something like this.

 








Al Peche, the
manager of Capparelli, testified that the restaurant employees frequently
gossiped about appellant, and that it was common knowledge that appellant had
tattoos and owned sexual paraphernalia. 
Mr. Peche said that, after Brittany had worked at the restaurant for several
months, she asked him if she could work more hours.  He testified that Brittany told him that Ashe didn=t know what to do;
she thought she was in love with [appellant]. 
She wanted to get close to him. . . . She needed to quit school so she
could work full-time@ and get closer to appellant.  Finally, Mr. Peche testified that a few days
before Brittany went to the police, she asked appellant to rehire her, but he
refused.

The jury charge
repeated the limiting instruction given during trial.  During closing arguments, the State relied
heavily on the extraneous offense involving Hailey as proof of appellant=s guilt:

Also in the [jury] charge, there is
a section that deals with what we call an extraneous offense.  And the language in that B I=ll go ahead and read it to
you.  First, the Judge provided us with a
definition of relevant evidence, which says that relevant evidence is evidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than without the
evidence. 

Then it goes on to tell you about
the extraneous offense.  And this offense
is the offense that the defendant committed back in February of 1999, when he
sexually assaulted Hailey.  First,
essentially, you must find or believe that that occurred beyond a reasonable
doubt; and two, you must find that it=s relevant.  In other
words, that it tends to prove or make some B that it tends to prove any allegation in the indictment,
or make any allegation in the indictment more or less probable. 

Then if you do find that, you can
use it in determining that there=s a common scheme or plan that is occurring here.  What we mean by common scheme or plan is that
the defendant has some MO, or he has some way of operating, or some way of
acting with regard to the way he treats the girls that he works with.  And I ask you to look at the consistencies between
Brittany=s testimony and Hailey=s testimony, and look at what is
consistent. 








The defendant is the owner of this
restaurant with both of the girls.  He
hires young girls to work there at the restaurant.  What does he do?  He gets close to these young girls.  He provides them with alcoholic beverages
while he=s there at the restaurant; takes
them both to nightclubs B different night clubs, granted,
but he nevertheless takes them both to nightclubs.  He intoxicates them.  

What else does he do?  He takes them back to his house at 400
Travertine.  Once back at the house, what
does he do with both girls?  He takes
them up to his bedroom.  While he=s up in his bedroom, he undresses
both girls, he engages in sexual intercourse with them.  But that=s not all he does with both girls.  What else does he do?  He displays pornographic images to them.  Both of them testified about that.  What else does he do?  He uses what has been described in this trial
as cock rings when he has sexual intercourse with them.  He uses a lubricant when he has sexual
intercourse with both of them. 

Ladies and gentlemen, this is
common scheme or plan that we=re talking about, and that=s why that evidence was brought
before you so you could see exactly the way this defendant operates and the way
that he treated both of these young ladies. 


We ask that each and every one of
you sitting here as jurors, please do not B we respectfully ask you do not buy into the defendant=s conspiracy theory.  That=s all it is.  If you
notice, he has an answer for every single thing that the state brought up
before him.  He=s going to tell you this is a big
conspiracy, and that these girls got together and they fabricated this lie and
brought this to the police=s attention.  

But you remember the
testimony.  There was no motive for
either one of these girls to do this. 
The defendant said that.  The
mother of Brittany also told you that it was her B she was the one who was upset
about this.  She was the one that had to
convince Brittany that this was the right thing to do.  Brittany did not have any axe to grind with
this defendant. . . .

 

The jury found
appellant guilty on all three counts.[8]








During the
punishment phase (but outside the presence of the jury), the court
articulated  the balancing test it used
in its Rule 403-404(b) ruling and said that the Afact of
consequence@ for which the extraneous offense evidence
was admitted was Athat [appellant] engaged in sexual
intercourse with a minor.  Whether he did
it, in other words.@ 
The court stated that the State offered the evidence  A[not] necessarily
to prove, but certainly to support the allegation of the underlying offense.@  Appellant then moved for a mistrial, arguing
that evidence is not admissible under the common scheme or plan exception to
404(b) unless the Athe defendant engaged in the extraneous
offense as part of the plan to commit the offense on trial.  In other words, what [the State] has to show
is that Mr. Daggett engaged in, or committed the first sexual assault against
Hailey as part of a plan to commit a sexual assault against Brittany.@  The trial court denied appellant=s motion for
mistrial.

On appeal,
appellant argued, inter alia, that the trial court abused its discretion
by admitting the extraneous offense under the common scheme or plan
exception.  He noted that Athe State offered
no evidence to show that Appellant=s extraneous
conduct with Hailey was in any manner part of a larger goal directed toward the
accomplishment of sexual intercourse with Brittany.@  The State argued that, even if the evidence
was erroneously admitted as part of a common scheme or plan, any error was
cured when appellant testified that he had never, and would never, commit such
an act with a sixteen-year-old girl.

The court of
appeals found that A[t]he similarities between the testimony
given by Brittany and Hailey is logically relevant and detailed enough to
constitute admissible evidence of a common plan or scheme.@[9]  The court noted appellant=s argument that
the evidence was not admissible under the common scheme or plan exception, but
then stated,








In the instant case, Daggett opened
the door during his direct examination when he stated, AI would not do something like that,@ and AI have never done anything of the
sort with a 16 year old girl period.@  Daggett=s denials opened the door and made
it permissible for the State to call Hailey. 
Therefore, even if it was error for the trial court to admit this
evidence, Daggett=s subsequent denials cured any
possible harm caused by the admission of this evidence.[10]


 

The court of
appeals affirmed the trial court=s judgment. 

II.








Generally,
evidence of extraneous offenses may not be used against the accused in a
criminal trial.[11]  While such evidence will almost always have
probative value, it forces the defendant to defend himself against uncharged
crimes as well as the charged offense, and encourages the jury to convict a
defendant based upon his bad character, rather than proof of the specific crime
charged.[12]  However, the general prohibition against the
admission of extraneous offenses to prove a defendant=s character or
propensity to commit the crime carries with it numerous exceptions.  One such exception under Rule 404(b) is proof
of the defendant=s Aplan,@[13] frequently, but
misleadingly, termed Acommon scheme or plan.@

When used
properly, the  Aplan@ exception allows
admission of evidence to show steps taken by the defendant in preparation for
the charged offense.[14]  For example, if the defendant steals a car on
Monday, buys a machine gun on Tuesday, pastes together a robbery note on
Wednesday, parks illegally in front of the Wells Fargo building on Thursday
while casing out the bank, and then robs the bank on Friday using the machine
gun and driving off in the stolen car, all of the extraneous acts are relevant
to prove each step of the defendant=s ultimate plan to
rob the bank.  








Unfortunately,
courts frequently admit evidence of extraneous acts under this exception not to
show acts the defendant took in preparation for the ultimate charged offense,
but to show repeated acts that are similar to the charged offense.[15]  Repetition of the same act or same crime does
not equal a Aplan.@[16]  It equals the repeated commission of the same
criminal offense offered obliquely to show bad character and conduct in
conformity with that bad characterBAonce a thief,
always a thief.@ 
This bad-character-conformity purpose, whether express or not, is
precisely what is barred by Rule 404(b).[17]  Thus, if the proponent is unable to
articulate exactly how an extraneous act tends to prove a step toward an
ultimate goal or overarching plan, the evidence is not admissible to prove part
of a Aplan.@













This does not
mean, however, that such evidence will always be inadmissible.[18]  If a defendant testifies to a blanket
statement of good conduct or characterBe.g., AI would never have
sex with a minor@B he may Aopen the door@ by leaving a
false impression with the jury about a relevant act or character trait.  Evidence of an extraneous act that tends to
rebut such testimony may be admissible to impeach the defendant.[19]  When such evidence is admitted, however, the
jury may not consider it as substantive evidence of the charged offense, but
only as evidence that the defendant misrepresented himself.  Thus, upon request, a judge must provide a
limiting instruction informing the jury that they may use the evidence only to
gauge the defendant=s credibility, not as any proof that he is
guilty of the charged offense.[20]


                                                            III.

In the present
case, the trial court admitted Hailey=s testimony about
her sexual relationship with appellant as evidence of a common scheme or plan
to have a sexual relationship with Brittany. 
However, the State failed to articulate any logical link between the
sexual interlude with Hailey and an ultimate goal or plan to have a sexual
relationship with Brittany.[21]  While, as the court of appeals pointed out,
the two offenses share numerous characteristics, A[a] series of
similar acts are not enough to show a common plan or design.@[22]  Therefore, we find the lower courts erred in
finding the evidence of the sexual encounter with Hailey admissible under the Aplan@ exception to Rule
404(b).    








The court of appeals
also found, however, that appellant Aopened the door@ by stating AI would not do something like that,@ and AI have never done anything of that
sort with a sixteen year old girl, period.@[23] 
We agree.  The State could
introduce evidence of appellant=s sexual conduct with Hailey to rebut these sweeping
statements disavowing any sexual misconduct with minors.[24]  While generally such evidence is admissible
only during the State=s rebuttal, we have previously found that, if extraneous
offense evidence is improperly introduced during the State=s case-in-chief, any error may be
cured by the defendant=s subsequent testimony which Aopens the door@ to rebuttal.[25]  













However, appellant
argues that the court=s limiting instruction, which allowed the
jury to consider Hailey=s testimony as proof of appellant=s Aplan,@ combined with the
State=s closing
argument,[26]
improperly permitted the jury to consider this testimony for its substantive
value.  We agree.[27]  Because Hailey=s testimony was
admissible only to rebut appellant=s blanket
statement of good conduct with minors, the trial court should have given the
jury an instruction that it could use that testimony only in assessing
appellant=s credibility, not as any proof that he
committed the charged offense or as any proof of some Aplan@ to have a sexual
relationship with Brittany. 

Here, the court of
appeals correctly determined that any harm caused by the error in admitting
Hailey=s testimony was
cured when appellant Aopened the door@ to its admission
during his testimony.  However, the trial
court also committed error by allowing the State to use the extraneous offense
as substantive evidence of the charged offense. 
Because the court of appeals did not assess the potential harmfulness of
this testimony being misused for substantive purposes when it was
admissible only to impeach appellant=s credibility, we
will defer to that court to conduct this harm analysis.  We therefore vacate the judgment of the court
of appeals and remand the case for further proceedings consistent with this
opinion.

 

Delivered:
December 14, 2005

Publish











[1]Daggett
v. State, 103 S.W.3d 444 (Tex. App.BSan
Antonio 2002). 





[2]Specifically,
this Court granted review to resolve the following issues:

1)         Did the Fourth Court of Appeals err in
finding that evidence of an extraneous third-party sexual assault was
admissible in the State=s
case-in-chief under a Acommon
scheme or plan@ theory?

2)         Did the Fourth Court of Appeals err in finding that any
error in the admission of  an extraneous
third-party sexual assault was harmless where appellant Aopened
the door@?





[3]The
names Brittany and Hailey were aliases used in the original indictment to
protect the complainants=
identities.  The indictment was amended
on the day of trial to substitute their real names.  Because the court of appeals used the aliases
in its opinion, we will do the same.





[4]The
original indictment charged sexual assault of both Brittany and Hailey.  The trial court severed the charges prior to
trial to avoid undue prejudice, but noted that evidence concerning Hailey might
become admissible under a specific rule of evidence.





[5]Specifically,
appellant argued that:  (1) the probative
value of the evidence was outweighed by unfair prejudice; (2) it was character
evidence, and under Rule 404(a) it was admissible only if the appellant Aopened the door@
to character evidence during his case-in-chief; (3) it was barred by Rule
404(b); and (4) it was not admissible as evidence of a common scheme or plan
under Rule 404(b) because the purpose of the common scheme or plan exception is
to Abolster identification,@ which was not at issue.  





[6]The
State, citing Garza v. State, 10 S.W.3d 765 (Tex. App.BCorpus Christi 2000, pet. ref=d), argued that Apreparation,
plan, and common scheme are just about always relevant in a case.@ 
It then noted that in the present case, the extraneous act was arguably
more similar to the charged offense than in Garza, and therefore it was
admissible as a common scheme or plan.  





[7]The
two witnesses=
statements were identical in nearly every respect, including the same
inaccuracies.  For example, both girls
described a Akiss mark@ tattoo that appellant had on his Aright butt cheek.@ 
In fact,  this tattoo was on appellant=s left side, not the right.





[8]
It assessed punishment at two years=
imprisonment on the first count and two years=
probation on the other two counts.





[9]Daggett,
103 S.W.3d at 448.





[10]
Id. (citations omitted).





[11]The
common-law rule dates back to well before enactment of the Texas Rules of
Evidence.  For example, in 1919, this
Court stated A[the]
general rule of evidence is that evidence of extraneous crimes is not received.@ 
Haley v. State, 84 Tex. Crim. 629, 633, 209 S.W. 675, 677 (1919);
see also Crank v. State, 761 S.W.2d 328, 342 (Tex. Crim. App. 1988)
(stating that extraneous offenses are generally inadmissible because the
propensity of the accused to commit crimes is immaterial in determining his
guilt for the crime charged against him). 
Rule 404(b), which codified this common law rule, states in part:  AEvidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.@  





[12]Albrecht
v. State, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972) (noting that evidence
of extraneous offenses Ais
inherently prejudicial, tends to confuse the issues in the case, and forces the
accused to defend himself against charges which he had not been notified would
be brought against him@).






[13]
Rule 404(b) sets out an illustrative, not exhaustive, list of exceptions to the
prohibition against admitting evidence of extraneous offenses including Aproof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or
accident.@
(emphasis added).





[14]See
Boutwell v. State, 719 S.W.2d 164, 181 (Tex. Crim. App. 1986)(op. on reh=g.) (ACentral
to the common plan or scheme exception is that there be a plan or scheme and
the extraneous offenses are steps taken towards the accomplishment of the plan.@); see also Haley, 209 S.W. at
678.  In
Haley, we explained:

[w]hen
the very doing of the act charged is still to be proved, one of the evidential
facts receivable is the person=s design or plan to do it.  To render them admissible, there must be not
merely a similarity in the results, but such a concurrence of common features
that the various acts are naturally to be explained as caused by a general plan
of which they are the individual manifestations. . . . To show a plan to rob a
safe, the stealing of the key would be relevant; or to show a plan to murder a
whole family and obtain their insurance money, the killing of other insured
members of the family would be admissible.

Id. at 678 (quotations omitted).





[15]See,
e.g., Garza v. State, 10 S.W.3d 765 (Tex. App.BCorpus
Christi, 2000, pet. ref=d).  In Garza, the appellant, an owner of a
motel, was charged with the sexual assault of a twelve-year-old employee.  Id. at 766-67.  The State offered evidence that appellant had
previously assaulted a different underage employee in a similar manner.  Id. at 771.  The court of appeals stated that the
extraneous offense showed appellant used his position of authority to lure
young girls into a position where he could assault them, and thus was
admissible for the purposes of showing a common scheme or plan.  Id. at 772. 





[16]
See United States v. Krezdorn, 639 F.2d 1327 (5th Cir.
1981).  In Krezdorn, the
government offered evidence of 32 extraneous offenses of forgery to prove the
defendant committed the charged offense of forging four documents.  Id. at 1330.  The court stated that

[t]he thirty-two additional forgeries
do not tend to establish the existence of a larger goal of which the four
charged forgeries were only a part.  The
four forgeries for which Krezdorn was indicted show that Krezdorn was engaged
in forgery.  That there were thirty-six
instead of only four forged I-190=s
does not establish anything different. 
It would, at best, merely demonstrate the repetition of similar criminal
acts, thus indicating Krezdorn=s
propensity to commit this crime. 
Evidence of other crimes is not admissible for this purpose.

Id. at 1331.





[17]
Michelson v. United States, 335 U.S. 469, 475-76 (1948); Crank v.
State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988).





[18]
In some instances, evidence of a remarkably similar act might be admissible to
prove the corpus delicti (the crime itself), intent, or lack of consent
under Athe
doctrine of chances.@  See, e.g., Martin v. State, ___ S.W.3d
___, ___, 2005 Tex. Crim. App. LEXIS 1618, *11-13 (Tex. Crim. App. 2005) (lack
of consent); Robbins v. State, 88 S.W.3d 256, 265-69 (Tex. Crim. App.
2002)(Cochran, J., concurring) (corpus delicti); Plante v. State,
692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985)(intent).  Here, however, where the two witnesses were Abest friends@
and regularly gossiped about appellant, Athe
doctrine of chances@ might be
equally applicable to prove the commission of the charged offense or the
fabrication of the testimony.  See Fox
v. State, 115 S.W.3d 550, 559-62 (Tex. App.BHouston
[14th Dist] 2002, pet. ref=d)
(defendant could employ Adoctrine
of chances@ to prove
that similar stories of defendant=s
purported sexual acts were the result of fabrication).





[19]See
Prescott v. State, 744 S.W.2d 128 (Tex. Crim. App. 1988).  In Prescott, the defendant testified
that it was his Afirst
time going through this.@
 Id. at 130.  The trial court held that this statement gave
a false impression to the jury that the defendant had no criminal record. Id.  In affirming the trial court=s ruling, this Court stated:

When the accused leaves such a
false impression during his direct examination, he is commonly said to have Aopened the door@
to an inquiry by the State as to the validity of his testimony.  Accordingly, the State is allowed, during cross-examination,
to do what it could not otherwise do. 
That is, dispel the false impression left by the accused as to his past,
a subject which is usually an irrelevant issue, collateral to the case, and
thus inadmissible. 

Id. at 131.  See also Garcia v. State, 454 S.W.2d 400,
406 (Tex. Crim. App. 1970) (allowing testimony that defendant had previously
been in fights to rebut false impression left by defendant that he was an Ainexperienced@
fighter who was afraid of complainant); Hernandez v. State, 897 S.W.2d
488, 494 (Tex. App.BTyler
1995, no pet.) (defense counsel=s
question, AHave you
ever had any other type of problems with the law?@
and defendant=s answer
of ANo,@
opened door to fact that defendant was wanted for murder in Mexico).





[20]See
generally, Tex. R. Evid.
105(a); see also Prescott, 744 S.W.2d at 133 (finding that the limiting
instruction given did not properly limit use of testimony of an extraneous
offense to impeachment purposes only). 





[21]
Of course, evidence that appellant plied Brittany with alcohol to lower her
resistance, trespassed in the park and illegally plucked bluebonnets to present
her with a nosegay, and stole a pie from a kitchen window sill to impress her
with his culinary skill would be admissible as steps in an ultimate plan to
seduce a minor.





[22]Boutwell,
719 S.W.2d at 180.





[23]Appellant
directly denied any propensity to commit the acts he was charged with at least
four separate times.  Two of these four
statements related directly to his relationship with Hailey.  If evidence of the extraneous offense
involving Hailey had not been admitted during the State=s
case-in-chief, appellant would not have made these comments.  However, the two statements appellant made
relating to the charged offense (AI=ve never done anything of the sort with a sixteen
year old girl period,@
and AI absolutely would not do something like this@) were enough to open the door to rebuttal
impeachment evidence involving Hailey.





[24]
When a witness makes a broad statement of good conduct or character on a
collateral issue, the opposing party may cross-examine the witness with
specific instances rebutting that false impression, but generally may not offer
extrinsic evidence to prove the impeachment acts.  Where, as here, the defendant=s statement of good conduct is directly
relevant to the offense chargedBi.e.,
AI would never have sexual relations
with a minor@Bthe opponent may both cross-examine the
defendant and offer extrinsic evidence rebutting the statement.  This is not impeachment on a collateral
matter.  The statement of good conduct
goes to the Aheart@ of the matter.  See, e.g., United States v. Antonakes,
255 F.3d 714, 724-25 (9th Cir. 2001).  In Antonakes, the Ninth Circuit
stated,

Rule 608(b) prohibits the use of
extrinsic evidence of conduct to impeach a witness=
credibility in terms of his general veracity. 
In contrast, the concept of impeachment by contradiction permits courts
to admit extrinsic evidence that specific testimony is false, because
contradicted by other evidence:

Direct-examination testimony
containing a broad disclaimer of misconduct sometimes can open the door for
extrinsic evidence to contradict even though the contradictory evidence is
otherwise inadmissible under Rules 404 and 608(b) and is, thus,
collateral.  This approach has been
justified on the grounds that the witness should not be permitted to engage in
perjury, mislead the trier of fact, and then shield himself from impeachment by
asserting the collateral-fact doctrine.

Id.  at 724-25 (quoting United States v.
Castillo, 181 F.3d 1129, 1132-33 (9th Cir. 1999), and quoting 2A
Charles A. Wright & Victor J. Gold,
Federal Practice and Procedure '
6119 at 116-17 (1993)).  





[25]See
Siquerios v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985) (Awhere an extraneous offense may have
been improperly admitted in the State=s
case-in-chief, subsequently admitted evidence can render the error harmless@).





[26]
Appellant argues that the trial court also committed error by allowing the
State to use the extraneous offense as substantive evidence of the charged
offense because the limiting instruction was both incorrect and it failed to
define Aplan.@ 
The State, during its closing argument, gave a definition of Acommon scheme and plan@ which encouraged the jury to use the
evidence for its substantive purpose of proving appellant had a propensity for
sexually assaulting young girls:

What we mean by common scheme or plan
is that the defendant has some MO, or he has some way of operating, or some way
of acting with regard to the way he treats the girls that he works with.  And I ask you to look at the consistencies
between Brittany=s
testimony and Hailey=s
testimony, and look at what is consistent. 

...

Ladies and gentlemen, this is common scheme
or plan that we=re
talking about, and that=s
why that evidence was brought before you so you could see exactly the way this
defendant operates and the way that he treated both of these young ladies.





[27]
The State argues that this Court did not grant review to determine whether the
charge was proper, but only to decide whether the evidence was properly
admitted.  This is not entirely accurate.  Appellant=s
second ground for review poses the question of whether admitting Hailey=s testimony offered to show appellant=s Aplan@ in the State=s
case-in-chief was harmful error when appellant later Aopened
the door@ to that
evidence for impeachment purposes.   

The State also
argues that appellant=s
failure to object to the charge in the trial court and his subsequent failure
to argue this point on appeal precludes him from raising the issue with this
Court.  While a defendant must generally
object to errors made during trial in order to preserve them for appeal, we
require only that objections to be based on arguments and rulings made during
the defendant=s
trial.  Appellant timely objected to the
admission of the evidence and was overruled based on the State=s argument that the offense was proof
of a Acommon
scheme or plan.@  He promptly requested a limiting instruction
and vigorously fought to insure that the instruction comported to the trial
court=s
ruling.  We cannot demand his use of a
crystal ball to divine theories of admissibility which might be
presented on appeal, but which were not argued in the trial court.  We therefore reject the State=s argument that because appellant did
not previously raise the issue of an improper limiting instruction, he must
show Aegregious
harm.@