Eliseo Hinojosa GARZA a/k/a
Joe Garza, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–99–208–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 6, 2000.

L. Aron Pena, Law Offices of L. Aron Pena, Edinburg, for Appellant.

Juan A. Guerra, Dist. County Atty., Raymondville for State.

Before Justices DORSEY, CHAVEZ and RODRIGUEZ.

**OPINION**

CHAVEZ, Justice.

Appellant Eliseo Hinojosa Garza, a/k/a Joe Garza, was convicted by a jury for the offenses of sexual assault of a child and indecency with a child.[1] Enhanced by a prior conviction for a similar offense, the trial court sentenced him to confinement for life. Appellant challenges the conviction by six points of error. We affirm.

The victim in this case, M.C., was a twelve year old girl at the time of the offense. Appellant was a sixty-eight year old man and a family friend who managed a small motel in Raymondville, Texas for a number of years. Initially, appellant had hired the child's mother to clean rooms at the motel, but when she could no longer do the work, appellant offered the job to her daughters. At least three of her daughters, including M.C., worked for appellant at various times. Typically, appellant

---

1. Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 1994), § 22.011(a)(2)(A) (Vernon Supp.2000).

would call to the house and inform one of the girls that he needed some rooms cleaned. If one of the girls agreed to work, he would drive to the house, pick her up, and take her to the motel.

M.C. did this work for appellant from December 1997 to April 1998. In addition to paying M.C. for cleaning the rooms, appellant offered her money if she would have sex with him, and she complied. According to M.C.'s testimony, this scenario went on for several months until she became scared and decided to call the police. Appellant was subsequently arrested, convicted, and sentenced.

By his first point of error, appellant contends the trial court erred in failing to grant a mistrial after some members of the jury panel may have seen him in shackles. Prior to voir dire, appellant and other prisoners were led into the courtroom in shackles and seated in the jury box. According to the bailiff, at the time the prisoners were brought into the courtroom, at least twenty of the fifty panel members were already seated in the courtroom. Appellant moved for a mistrial on this basis, but the motion was denied. Instead, the trial court stated that it would give a limiting instruction to the jury. Thereafter, voir dire was conducted and a jury was selected from among the panel, but no instruction was ever requested or provided.

■ Generally, requiring a defendant to wear shackles or handcuffs before the jury infringes his constitutionally guaranteed presumption of innocence. *Kelley v. State,* 841 S.W.2d 917, 919 (Tex.App.—Corpus Christi 1992, no pet.) (citing *Long v. State,* 823 S.W.2d 259, 282 (Tex.Crim.App.1991)). However, these cases and others cited by appellant are distinguishable from the present case in that they dealt with situations in which a defendant was shackled during trial or was compelled to stand trial while wearing jail clothing.

The present case involves only the one instance where appellant was led into the courtroom wearing shackles prior to voir dire. In *Wright v. Texas,* 533 F.2d 185 (5th Cir.1976), the Fifth Circuit reaffirmed its previous holdings that a brief and fortuitous encounter of the defendant in handcuffs by jurors is not prejudicial per se and requires an affirmative showing of prejudice by the defendant. There, the court found that it was not unreasonable for state officers to handcuff a defendant who was being transported to and from the courtroom. The court reasoned that:

> [t]he inadvertent view by a juror of the defendant in such a situation cannot be said to be so inherently prejudicial as to be incapable of correction had the defendant made a timely objection. It must be assumed that rational jurors would understand and follow a proper instruction that handcuffing persons in custody for transportation to and from the courtroom is a reasonable precaution that in no way reflects upon the presumption of innocence or the individual propensities of any defendant.

*Id.* at 188.

■ Here, prejudice cannot be presumed and it was incumbent on appellant to affirmatively show prejudice. For instance, appellant could have attempted to establish that the jurors who were ultimately selected from the panel did in fact see the accused in leg chains, that they discussed the incident with other jurors, and that the sight influenced their decision to convict. *See Boyington v. State,* 787 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); *Swanson v. State,* 722 S.W.2d 158, 163 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). In appellant's case, no such showing of prejudice was attempted, but even if it had been, appellant waived error by failing to question members of the jury panel for the purpose of excluding any members who may have viewed him in shackles. *See Wright,* 533 F.2d at 187. Furthermore, despite the court's statement that it would offer a limiting instruction, appellant made no request to have an instruction given to

the jury panel, or the jury after it was impaneled. Point one is overruled.

By his second point of error, appellant claims the trial court erred in excluding a veniremember when he was not shown to be excusable for cause. During voir dire, the following exchange took place between the court and veniremember Gilberto Gill regarding the potential for bias:

GILL: I know the defendant and his family. I've known them all my life. I'm not sure about whether it will affect me or not.

COURT: Do you feel you can set aside any personal knowledge you may have of the defendant and any feelings you may have and just listen to the evidence from the witness stand and arrive at a decision?

GILL: I think I could, yes, ma'am.

COURT: I'm sorry?

GILL: I think I could do that.

The State's challenge for cause against Gill was based on his equivocal response to the court's questioning. When the feeling expressed by a prospective juror is one of bias or prejudice in favor of or against the defendant (as opposed to a bias or prejudice against the law), it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice or bias. *Smith v. State*, 907 S.W.2d 522, 530 (Tex.Crim.App. 1995); *Mize v. State*, 754 S.W.2d 732, 741 (Tex.App.—Corpus Christi 1988, pet. ref'd). Furthermore, it is properly within the judge's discretion to grant a challenge for cause to an equivocating juror. *Smith*, 907 S.W.2d at 529. Appellant's second point of error is overruled.

Appellant complains in his third point of error that the trial court committed reversible error when it required him to accept two female jurors that he had stricken with his allotted peremptory challenges.

At the conclusion of voir dire, and after both sides had made all their peremptory strikes, the State made the court aware that no females would be seated on the jury. The State made a *Batson* motion and challenged appellant's strikes alleging that gender played a role in his decision to use six of his ten strikes against females. Although appellant's counsel explained that it was not his intention to purposely strike the females, the court required him to provide his reasons for exercising his peremptories against the females.

The authority for the State's challenge is found in the U.S. Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There, the Court explained that the U.S. Constitution "prohibits all forms of purposeful racial discrimination in the selection of jurors" and a prosecutor cannot use a peremptory strike against a veniremember solely on account of race. *Id.* at 88–89. But the ability to challenge peremptory strikes on the basis of race is not limited to the defendant. In *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Court made it clear that prosecution could also bring a *Batson* challenge against racial discrimination by a defendant.

The Supreme Court extended its holding in *Batson* to gender-based peremptory challenges in *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), where the Court found that the harm caused by racial discrimination in the jury selection process occurs with gender discrimination as well. Thereafter, the Texas Court of Criminal Appeals applied *J.E.B.* when it held that the State's peremptory challenges of seven male veniremembers was a violation of the Equal Protection Clause because the State failed to articulate gender-neutral explanations for the challenges. *Fritz v. State*, 946 S.W.2d 844, 847 (Tex.Crim.App.1997).

The analysis used to test a *Batson* challenge consists of three steps. First, the party challenging the discriminatory

strikes (in this case, the State) is required to establish a prima facie showing of discrimination against an eligible veniremember. To make such a case, the party must show that relevant circumstances raise an inference that the defendant made a gender-based strike. After the State has made a prima facie case, the burden shifts to the defendant to come forward with a gender-neutral reason for the strike. And finally, if the defendant offers a gender-neutral explanation, the burden shifts back to the State to persuade the court that the defendant's purported reasons for its peremptory strikes were a mere pretext and were in fact motivated by gender. *See Batson,* 476 U.S. at 94–98, 106 S.Ct. 1712.

■ We address *Batson* issues by using a "clearly erroneous" standard of review. *Hill v. State,* 827 S.W.2d 860, 865–66 (Tex. Crim.App.1992); *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989). To determine whether the fact finder's decision is "clearly erroneous," appellate courts look to the record to see if they are left with the definite and firm conviction that a mistake has been committed. *Hill,* 827 S.W.2d at 865. In doing so, the evidence must be considered in the light most favorable to the trial court's rulings. *Id.*

■ In the present case, the State objected to appellant's peremptory strikes and made a prima facie case of gender discrimination by indicating to the trial judge that, in calling the first twelve jurors that had not been excused or stricken, no women would be seated on the jury. The State also indicated that appellant had used six of his ten strikes against women. Although six strikes out of ten is not greatly disproportionate, we find the State made a prima facie case by showing that the six strikes would effectively remove all women from sitting on the jury.

Appellant's counsel responded by attempting to offer gender-neutral reasons for exercising his strikes. As to veniremember Chris Lopez, counsel stated he used a strike because he believed the prosecutor knew her because he called her by her first name during voir dire. The prosecutor told the court he did not know Ms. Lopez, but only used her first name because it was on her jury information card. As to veniremember Delia Aparicio, counsel explained that she was struck because her husband worked for the sheriff's department. Counsel stated that he struck Paula Solis because she was a single woman in her fifties and this concerned him because "single people are afraid of crime in general. They live alone in many instances." Counsel gave a similar reason for striking Clara Flores. As to Jessica Berrones, defense counsel explained that she worked as a nurse and he assumed her job was associated with child care. He also expressed concern about Ms. Berrones because she had four children. As to Betty Williams, counsel's only reason to the court was that she was self-employed and in her late sixties.

The court was not satisfied with appellant's reasons and the State suggested that appellant's counsel reconsider some of his strikes. To remedy the problem, the court disallowed appellant's six peremptory strikes against the females and gave appellant an opportunity to exercise another six strikes. Appellant maintained four of his six strikes against four of the women he had previously struck arguing that he had "a very reasonable basis to have exercised those strikes other than gender." The effect of this procedure allowed two women to sit on the jury who had initially been struck, and the court and the State agreed that this would be acceptable. Appellant contends that the reinstatement of these two jurors was clearly prejudicial and that the use of his peremptory challenges is a basic right to a fair jury trial.

■ After a thorough review of the record, we find that the trial court's actions were not "clearly erroneous" with respect to its finding that the appellant had failed to provide gender-neutral reasons for striking the women. Furthermore, a trial

court's reinstatement of improperly excluded veniremembers to the jury, rather than dismissing the entire array is an acceptable remedy for constitutional purposes. *Curry v. Bowman,* 885 S.W.2d 421, 424–25 (Tex.Crim.App.1993); *Sims v. State,* 792 S.W.2d 81, 82 (Tex.Crim.App. 1990). Appellant's third point of error is overruled.

Appellant's fourth point of error claims the trial court erred in refusing to dismiss a second indictment that was not brought within the next term of court following appellant's arrest. *See* Tex. Code Crim. Proc. Ann. arts. 28.061, 32.01 (Vernon Supp.2000).[2]

Appellant was arrested in April 1998. The record does not indicate and appellant has failed to provide us with a clear account of the events that took place between appellant's arrest and the second indictment under which appellant was convicted. Nevertheless, from our reading of appellant's brief, we presume that the State timely filed its initial indictment, but moved to dismiss it because it did not contain an enhancement paragraph. Thereafter, the record reflects that a second indictment was presented on September 17, 1998.

Article 32.01 of the code of criminal procedure provides:

> When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.

Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon Supp.2000).

Based on this statute, appellant filed a "Motion to Dismiss By Reason of Delay" with the trial court on November 4, 1998. In the motion, appellant argued that, since appellant's arrest and custody, the County "had at least two grand jury sessions when this case may have been presented, but due to inaction of the State, was not." Notwithstanding the State's initial indictment being timely filed, appellant's complaint appears to be that, because the second indictment was not filed in accordance with article 32.01, the trial court was required to dismiss it.

■ Appellant's reliance on article 32.01 and the enforcing provision of article 28.061 is misplaced. Article 32.01 is directed toward a defendant in custody, with no indictment. We agree with the holding by the San Antonio Court of Appeals that a defendant cannot complain of the timeliness of a second or other indictment under article 32.01 once a valid and timely indictment has been secured by the State. *See Cameron v. State,* 988 S.W.2d 835, 843 (Tex.App.—San Antonio 1999, pet. ref'd). For timeliness purposes, article 32.01 is satisfied once the State secures a timely indictment arising out of the same criminal transaction or occurrence. The defendant suffers no due process violation if he continues under a valid indictment, although it is not the indictment he is ultimately prosecuted and convicted for, so long as the indictment arises out of the same criminal transaction or occurrence. *Id.* Appellant's fourth point of error is overruled.

■ Appellant's next point of error challenges the legal sufficiency of the evidence to support appellant's conviction for sexual assault. In reviewing the legal sufficiency of the evidence adduced at trial, we examine all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of

---

**2.** This Court has found article 28.061 to be unconstitutional. *See Hixson v. State,* 1

S.W.3d 160, 163 (Tex.App.—Corpus Christi 1999, no pet. h.).

fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim.App.1996).

The elements of sexual assault as they apply to this case are: A person commits an offense if the person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means. TEX. PEN. CODE ANN. § 22.011(a)(2)(A) (Vernon Supp.2000). "Child" means a person younger than seventeen years of age who is not the spouse of the actor. TEX. PEN. CODE ANN. § 22.011(c)(1) (Vernon Supp.2000). A conviction for sexual assault may be based on the uncorroborated testimony of the victim if the victim is less than eighteen years old at the time of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp.2000).

It was undisputed that the victim, M.C., was not appellant's spouse and was younger than seventeen years of age. She testified that on several occasions, appellant offered her money for sex and she complied. She described several instances where appellant would approach her and ask her to remove her clothing. He would then proceed to have sex with her. On cross-examination, appellant's counsel attempted to refute the fact that there was penetration because M.C. described appellant's penis as "soft." However, M.C. testified under direct examination that on her first encounter with appellant, he had penetrated her and stayed on top of her for fifteen minutes before somebody began knocking on the door of the motel office.

Dr. Maria Abella examined M.C. on the day M.C. reported appellant to the police. M.C. explained to her that she would receive small sums of money to have sex with appellant, and when Dr. Abella asked, "What do you mean when you say you had sex?", M.C. responded that appellant would put his penis into her vagina and this would take place for ten or fifteen minutes. Dr. Abella stated the examina-tion revealed that the child's hymen was not intact. While this would be indicative of sexual activity, Dr. Abella added that some girls don't have their hymen intact for some reason or another, and even if they have never had sex at all.

Based on the victim's testimony and Dr. Abella's, a rational jury could have found the essential elements of sexual assault beyond a reasonable doubt. The jury, as trier of fact, is the sole judge of the credibility of witnesses and may believe or disbelieve all or any part of a witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Therefore, if there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.* Appellant's fifth point of error is overruled.

Appellant's sixth and final point of error contends the trial court erred in allowing evidence of extraneous offenses through three witnesses because it proved nothing more than character conformity in violation of Texas Rule of Evidence 404(b).

The admission of evidence is a matter within the discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Crim.App.1990) (opinion on reh'g); *Suarez v. State*, 901 S.W.2d 712, 720 (Tex.App.—Corpus Christi 1995, pet. ref'd). Accordingly, the trial court's admission of evidence is reviewed under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 379–80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Rachal v. State*, 917 S.W.2d 799, 807 (Tex.Crim.App.1996); *Montgomery*, 810 S.W.2d at 391. If the opponent of extraneous offense evidence objects on the grounds that the evidence is

not relevant to a material issue, violates rule 404(b), or constitutes an otherwise inadmissable extraneous offense, the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value. *Montgomery,* 810 S.W.2d at 387.

One of the State's witnesses was a thirteen-year old girl who, like the victim, had cleaned rooms at the motel with her sister. She testified that when she was nine or ten years old, she was alone with appellant when he laid her down on a bed, exposed his penis to her, and began touching her "almost everywhere." She stated that this occurred on several occasions at the motel. The second witness was twenty years old who, at the age of fifteen, had been hired along with her aunt to clean the motel office. She testified that on this one occasion, appellant offered her additional money "to go out with him and stuff." The third witness was twenty-two years old at the time of trial. She testified that she worked for appellant when she was eleven years old at a small store that he operated next to the motel. She explained that on several occasions over a three-month period, appellant would take her to the back of the store and pay her money to take her clothes off. Appellant would then undress himself, and get on top of her.

Throughout the testimony of these witnesses, appellant maintained a running objection under rule of evidence 404. Typically, evidence about the details of an offense as a method of proving that person's character are not admissible to prove actions being taken in conformity with that character. TEX. R. EVID. 404(a). Subdivision (b) of that rule, however, provides that such evidence is admissible to prove such matters as motive, opportunity, intent, preparation, plan, knowledge, etc. TEX. R. EVID. 404(b). Over appellant's objection, the court allowed the testimony for the purpose of showing a common preparation or plan by the appellant. However, after the testimony was admitted, appellant re-urged his objection and

the trial court instructed the jury that they were to disregard the testimony of the second witness. As to the other two witnesses, the jury was instructed to consider the evidence only for its limited purpose to show preparation or plan.

We discern no abuse of discretion in the trial court's admission of the evidence. The trial court could have reasonably concluded that the extraneous offense evidence was logically relevant to show a common scheme or plan. As the State argued and the evidence showed, appellant used his position as the manager of a small motel and a nearby store to offer employment opportunities to young girls. After the girls would begin working for him, he would seek an opportunity to be alone with them, and then molest them by offering money for sexual favors. We hold that the trial court did not abuse its discretion in admitting the evidence of the extraneous offenses to show a common scheme, preparation, or plan by appellant. Appellant's sixth point of error is overruled.

Accordingly, we affirm the trial court's judgment.