

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00156-CR

_____


GEORGE LEE WOODS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the County Court
Lamar County, Texas
Trial Court No. 51849


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

George Lee Woods was sentenced to 270 days in jail and ordered to pay $500.00 in restitution after a jury convicted him of driving while intoxicated (DWI). Woods has appealed. Woods's complaints are threefold: He first argues that the trial court improperly commented on the weight of the evidence when it instructed the jury it could "consider the defendant's refusal to submit to a breath test as evidence." His second and third arguments involve the actions of the trial court after having sustained a *Batson*[1] challenge. In one, he complains that the trial court erred in allowing the State to have further peremptory strikes after it struck two jurors on the basis of race. In the other, he contends that the trial court erred when it reinstated the improperly-struck jurors instead of calling for a new array.

## I.     Improper Instruction in Charge

The function of the jury charge is to inform the jury of the applicable law and to guide the jury in its application of the law to the case that jury must decide. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). When reviewing a jury charge, we first determine whether error exists and, if error does exist, address whether the harm caused by the error warrants reversal. *Id.* at 170–71 (citing *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)).

Because judges are neutral arbiters in the Texas adversarial system, the charge must not express any opinion as to the weight to be accorded to the evidence. *Brown v. State*, 122 S.W.3d

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

794, 797 (Tex. Crim. App. 2003); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). An instruction that "unjustifiably singles out a particular piece of evidence for special attention" is improper. *Hess v. State*, 224 S.W.3d 511, 515 (Tex. App.—Fort Worth 2007, pet. ref'd) ("Although the jury was certainly free to consider Hess's refusal to submit to the [breath] test as evidence in the case, the court was not justified in singling out that specific piece of evidence and inviting the jury to pay particularized attention to it."). As the State concedes, submitting an instruction to the jury regarding failure to submit to a breath test is an impermissible comment on the weight of the evidence, which must be evaluated for harm. *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008); *Leija v. State*, No. 04-08-00679-CR, 2009 WL 331897, at *1 (Tex. App.—San Antonio Feb. 11, 2009, no pet.) (mem. op., not designated for publication) (holding that although instruction on defendant's refusal to submit to a breath test was error, record did not demonstrate egregious harm); *Vargas v. State*, 271 S.W.3d 338, 340 (Tex. App.—San Antonio 2008, no pet.) (same); *Hess*, 224 S.W.3d at 515.

The degree of harm which is necessary to require reversal depends upon whether the error was preserved. *Hutch*, 922 S.W.2d at 171. If the appellant raised a timely objection in the trial court to the error, then the appellate court must reverse the trial court's judgment if the error "was calculated to injure the rights of [the] defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). Had there been a

timely objection made to the error in the charge, all that Woods would need to demonstrate is that he suffered "some harm." *Almanza*, 686 S.W.2d at 171. However, there was no objection lodged by Woods to the charge as submitted. Because Woods failed to make a timely objection to the charge, a different standard of review applies: reversible error will only exist in this case if the record demonstrates that Woods suffered actual, egregious harm resulting from the incorrect charge. *See id.* Egregious harm arises if the error is so severe that it deprived Woods of a fair and impartial trial, affected the very basis of the case, vitally affected a defensive theory, or otherwise deprived him of a valuable right. *Id.*; *Warner v. State*, 245 S.W.3d 458, 461–62 (Tex. Crim. App. 2008).

Woods attempts to demonstrate that he suffered egregious harm because: (1) there was evidence his actions as observed by others were caused by engine fumes instead of alcohol, and (2) the offending instruction was placed "in a numbered paragraph of it's [sic] own, and just above the paragraph that tells the jury that it is not to discuss inadmissible evidence."[2] In determining whether egregious harm exists, we consider the entire jury charge, the state of the evidence, arguments of counsel, and any other relevant information in the record as a whole. *Almanza*, 686 S.W.2d at 171; *Hutch*, 922 S.W.2d at 171; *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993); *Leija*, 2009 WL 331897, at *2. Although neither party has the burden to demonstrate

---

[2]"Because these issues were never preserved, they cannot be considered as discrete points of error." *Leija*, 2009 WL 331897, at *2 (addressing similar argument regarding placement of erroneous instruction); *see* TEX. R. APP. P. 33.1(a).

the existence or the absence of harm,[3] "[e]gregious harm is a difficult standard to prove and such determination must be done on a case-by-case basis." *Hutch*, 922 S.W.2d at 171; *Warner*, 245 S.W.3d at 462–64.

Absent the comment regarding the breath test, there is no further error in the charge, and the State made no comment on the issue during closing argument. Most important, the state of the evidence demonstrates why Woods cannot show he was egregiously harmed in this case.

In looking at the case as a whole, we first look at the evidence presented at trial:

Candi Daniel was returning home from a Christmas party on a four-lane road when she noticed a vehicle being driven by Woods was weaving. Witness Amber Dobbs also took note that Woods was driving "quite erratically. He was all over the roadway in both the northbound lanes, onto the curb." Woods pulled over to the right shoulder of the roadway and stopped. Concerned, Dobbs stopped behind him and placed an emergency call to report the situation.

Next, both Daniel and Dobbs watched as Woods "gunned his vehicle and tried to take a u-turn—to turn southbound in the northbound lane," even though there was a grass median separating the opposing lanes. He crossed two lanes before colliding with a truck in front of Daniel. Dobbs and Daniel went to check on Woods, who had "exited his vehicle and was standing in the middle of the roadway." He "had to hold onto [Daniel and Dobbs] to get to the side of the road." Both witnesses observed Woods smelled of alcohol, "was very slurred, kept telling us how much he

---

[3]The burden of examining for harm rests with the appellate courts. *Warner*, 245 S.W.3d at 463–64; *Nunez v. State*, 215 S.W.3d 537, 543 (Tex. App.—Waco 2007, pet. ref'd).

5

loved us and how much he appreciated us." They concluded that Woods had lost normal use of his mental faculties because he was intoxicated.

Officers Joey McCarthy and Thomas Curry arrived at the scene where Woods's vehicle was blocking the northbound lanes of traffic. While only McCarthy noticed Woods's red eyes, both officers observed that he could not maintain his balance, smelled of alcohol, and slurred his speech. Curry attempted to administer the horizontal-gaze nystagmus, walk-and-turn, and one-legged stand field-sobriety tests, but Woods either "never understood the tests well enough or he wouldn't cooperate enough to perform any of the tests." Dobbs stated Woods "became erratic and not very cooperative," while Daniel claimed he was "getting very defensive and [Daniel saw] a little bit of shoving." Drawn from these observations, both officers concluded that Woods was intoxicated and he was transported to the intoxilyzer test room, where he admitted to drinking beer and whiskey. Woods refused to submit to a breath test. He was eventually transported to jail and charged with DWI.

In addition to the events described above, the jury watched a video taken of Woods in the intoxilyzer room, which demonstrated Woods swaying, falling down, and slurring his words. Unable to use the restroom due to police policy, Woods urinated on himself after fifteen minutes in the intoxilyzer room.

In order to combat this video evidence and the testimony of the four State witnesses, Woods claimed that his behavior that night was precipitated by a panoply of physical difficulties, including:

6

uncontrolled high blood pressure, chronic back pain, radiculopathy, arthritis, leg, knee, and hip pain, nerves, and anxiety. Woods also advanced a theory that he appeared intoxicated due to fumes which emanated from the engine of the 1985 Dodge vehicle he had been driving. However, two of the three defense witnesses also testified that they had observed Woods consume beer on the day of the accident at two different locations. In other words, evidence of the refusal of Woods to submit to the breath test was a virtual grain of sand on the mountain of evidence which the jury heard.

We find the jury could have assessed Woods's guilt beyond a reasonable doubt based on this evidence presented at trial. *See Vargas*, 271 S.W.3d at 341 (citing *Brown v. State*, 122 S.W.3d 794, 803–04 (Tex. Crim. App. 2003)). Neither the record before us nor Woods's brief establishes that the error was either calculated to injure his rights or deprived him of a fair trial. *See Almanza*, 686 S.W.2d at 171; *Leija*, 2009 WL 331897, at \*3 (citing *Hess*, 224 S.W.3d at 515); *Vargas*, 271 S.W.3d at 341. Given the weight of the evidence as a whole, we cannot say that the court's instruction caused Woods egregious (or even substantial) harm. *See Hess*, 224 S.W.3d at 516.[4]

We overrule this point of error.

## II.   Reinstatement of Stricken Jurors after a *Batson* Challenge

After voir dire, Woods urged a *Batson* challenge and argued that the State struck three African-American veniremembers on the basis of their race. Although the State responded that one

---

[4]To the extent it failed to apply the *Almanza* harm analysis, this Court's prior opinion in *Fried v. State* is overruled. No. 06-06-00164-CR, 2007 WL 608392 (Tex. App.—Texarkana Mar. 1, 2007, no pet.) (mem. op., not designated for publication).

of those potential jurors was struck due to lengthy criminal history, it failed to satisfy the trial court that the other two members were struck for race-neutral reasons. The court sustained the *Batson* challenge as to two remaining veniremembers and asked counsel what remedy was being sought. Woods clearly and repeatedly requested the court "[t]o put them back on the panel." The trial court complied with the request by reinstating the veniremembers as jurors and gave the State two additional peremptory strikes to replace those used to strike those reinstated veniremembers. Although the reporter's record does not demonstrate that the State used the strikes, the clerk's record contains some evidence that it employed one of the additional strikes. When the court announced the prospective jury panel, neither the State nor Woods voiced any objection to its makeup.

"Racial discrimination has no place in the courtroom." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630 (1991). The Equal Protection Clause of the Fourteenth Amendment prohibits the State from using peremptory challenges to deliberately exclude persons from jury participation solely on account of their race. *Id.* at 616; *Batson*, 476 U.S. at 86; *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 423 (Tex. Crim. App. 1993). The harm caused by a *Batson* violation "is inflicted not only upon the parties but the excluded juror" who "suffers a profound personal humiliation heightened by its public character." *Curry*, 885 S.W.2d at 424–25. To remedy this harm, a "court may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Id.* at 425. Thus, we review the remedy employed by the trial court for abuse of discretion. *Boones v. State*, 170 S.W.3d 653, 657 (Tex. App.—Texarkana 2005, no pet.).

8

Texas statutory law directs that the court shall "call a new array in the case" if it "determines that the attorney representing the state challenged prospective jurors on the basis of race." TEX. CODE CRIM. PROC. ANN. art. 35.261(b) (Vernon 2006). Woods argues this language provides an exclusive remedy such that the trial court erred when it reinstated the previously-stricken African-American jurors, rather than calling a new array. In *Boones*, this Court decided this exact issue and the Texas Court of Criminal Appeals has clarified that the statutory remedy is not exclusive, especially where, as here, a "defendant acquiesces to a remedy other than that prescribed in Article 35.261(b)." *Curry*, 885 S.W.2d at 422–23 (holding trial court committed no error when it reinstated veniremembers struck on basis of race instead of calling new array); *Boones*, 170 S.W.3d at 655–57. The reasoning behind this nonexclusion is simple: "If the only remedy is dismissal of the array, the affected veniremember is still not allowed to participate in the process," a result that may defeat the purpose of the *Batson* protection. *Curry*, 885 S.W.2d at 425.

Here, Woods did not assert any statutory right in front of the trial court. As in *Curry* and *Boones*, Woods specifically requested that the excluded veniremembers be reinstated to the jury, a remedy the court is authorized to use after sustaining a *Batson* challenge. *See Boones*, 170 S.W.3d 657; *Garza v. State*, 10 S.W.3d 765, 769–70 (Tex. App.—Corpus Christi 2000, pet. ref'd). Based on the state of the law on this matter, we cannot say the trial court acted without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

This point of error is overruled.

**III.     Preservation of Error on the Additional Peremptory Strike Issue**

Finally, for the first time at the appellate stage, Woods contends the trial court erred when it allowed the State additional peremptory strikes after determining its strikes had violated *Batson*. "As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request" and that the trial court ruled or refused to rule on the request. TEX. R. APP. P. 33.1. Woods failed to bring the matter to the trial court's attention by objecting or requesting additional strikes. Moreover, he ratified the trial court's solution by stating that he had no objection when the court announced the prospective jury panel. We find Woods waived this point of error.[5] *See Simpson v. State*, 119 S.W.3d 262, 267 (Tex. Crim. App. 2003) (error during voir dire can be waived); *Noble v. State*, No. 05-02-01734-CR, 2004 WL 112940, at *8 (Tex. App.—Dallas Jan. 26, 2004, no pet.) (not designated for publication) (*Batson* challenges can be waived); *Atkins v. State*, 919 S.W.2d 770, 775 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (same).

We overrule this final point of error.

---

[5]Moreover, it appears that trial courts have allowed additional peremptory strikes to replace those expended after disallowing strikes used in violation of *Batson. Garza*, 10 S.W.3d at 769.

10

## IV.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:    May 6, 2009
Date Decided:    May 7, 2009

Do Not Publish