NO. 07-10-00028-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 28, 2011

_____

BRIAN KEITH JENSEN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY;

NO. 48,587-C; HONORABLE MARK PRICE, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Brian Keith Jensen, appeals his conviction for the offense of possession of a firearm by a felon[1] and resulting sentence of 99 years incarceration in the Institutional Division of the Texas Department of Criminal Justice.  We affirm.

Background

In the early morning hours of March 21, 2008, Herbert Palmer, a taxi cab driver for All-American Cab Company, picked up a passenger at Econo Lodge room 446 in Wichita Falls.  During the ride, the passenger told Palmer that he had gotten into a fight

_____
[1] See TEX. PENAL CODE ANN. § 46.04(a) (West Supp. 2010).

with a friend and that the friend had been shot during the fight. The passenger also told Palmer that he thought that the friend had suffered serious bodily injury. The passenger then asked to borrow Palmer's cell phone. During the call that the passenger made, Palmer heard the passenger reiterate that he had gotten into a fight with another person and that the other person had been shot during the altercation. After dropping off the passenger, Palmer flagged down Jesse Bartow, a patrol officer with the Wichita Falls Police Department. Palmer informed Bartow about the suspicious passenger and of the potential shooting.

Bartow radioed for assistance and proceeded to the Econo Lodge. After acquiring a keycard from the manager, Bartow went to room 446 to check the welfare of the occupant of the room. Bartow knocked on the door, but no one responded. Eventually, Bartow used the keycard and entered the room to discover the dead body of Robert Sommer, who appeared to have been shot and killed. Palmer was summoned to the Econo Lodge where he described the passenger.

Officer Robert McCann received a dispatch regarding the passenger while McCann was on patrol. The dispatch operator described the suspect and indicated that the suspect was taking a taxi cab to a Wal-Mart on Lawrence Road. When McCann arrived at the Wal-Mart, a taxi cab pulled up beside his vehicle. The cab driver informed McCann that he had just dropped off the guy that McCann was looking for at the Wal-Mart.[2] McCann then proceeded to the Wal-Mart entrance where he observed a male

_____

[2] It appears that this second cab driver had been monitoring a police scanner and, therefore, knew that the Wichita Falls Police were looking for a murder suspect and that the passenger that the driver dropped off at Wal-Mart met that description.

that met the description of the suspect leaving the store on foot. McCann exited his vehicle, drew his weapon, pointed his weapon at the suspect, identified himself as police, and ordered the suspect to the ground. As McCann was detaining the suspect, another officer pulled up and placed the suspect in handcuffs. This officer then asked the suspect if he had any weapons and the suspect indicated that he had a gun in the front of his pants. The officer secured the firearm. After a brief frisk for other weapons, the suspect was placed in a patrol car for transport back to the station for questioning. The suspect was subsequently identified to be appellant, who is a convicted felon.

Appellant was indicted for the offense of unlawful possession of a firearm by a felon.[3] Prior to trial, appellant filed a motion to suppress the firearm contending that it was seized as part of an illegal arrest of appellant. After holding a hearing, the trial court denied the motion. The case then proceeded to a jury trial. At the close of the trial, appellant requested the trial court instruct the jury to resolve a disputed fact issue regarding the legality of appellant's arrest. The trial court denied this request. The jury convicted appellant of the offense. During the punishment portion of the trial, appellant was brought into the courthouse in handcuffs, and he contends that several jury members saw him being transported in this manner. However, appellant was not taken

---

[3] The indictment also included an allegation that appellant committed murder, but the murder count was severed from the weapons charge and remains pending in the trial court.

into the courtroom while wearing handcuffs. At the close of the punishment proceeding, the jury recommended that appellant be sentenced to 99 years incarceration.[4]

By three issues, appellant appeals. By his first issue, appellant contends that the trial court erred in denying his motion to suppress the firearm on the basis that the seizure of the weapon occurred during the illegal arrest of appellant. By his second issue, appellant contends that the trial court erred in denying his request to instruct the jury to resolve disputed fact issues regarding the legality of appellant's arrest. By his final issue, appellant contends that his constitutional rights were violated when jurors were allowed to see appellant brought into the courthouse in handcuffs.

## Motion to Suppress

By his first issue, appellant contends that the trial court erred in denying his motion to suppress the gun because the police seized this evidence as part of an illegal arrest. The State responds that the gun was seized as part of only an investigative detention, but, even if construed as an arrest, appellant's arrest was authorized under the circumstances.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. Shepherd v. State, 273 S.W.3d 681, 684 (Tex.Crim.App. 2008). In so doing, we view the facts in the light most favorable to the trial court's decision. Id. We give

---

[4] While the felon in possession of a firearm offense for which appellant was charged constitutes a third degree felony, see TEX. PENAL CODE ANN. § 46.04(e), because the indictment alleged that appellant had been previously convicted of three prior felony convictions and the State proved at least two of these prior felony convictions as alleged, the applicable punishment range for the offense was enhanced to life or 25 to 99 years. See id. § 12.42(d) (West Supp. 2010).

almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the trial court's application of the law of search and seizure to those facts. Id. We will sustain the admission of the evidence if admission is reasonably supported by the record and correct on any theory of law applicable to the case. Laney v. State, 117 S.W.3d 854, 857 (Tex.Crim.App. 2003).

Appellant's issue specifically challenges the trial court's denial of the motion to suppress the handgun that was found in appellant's possession. Appellant contends that this evidence "was the product of a warrantless arrest without a lawful and statutory exception" to the warrant requirement. However, the gun was seized very early in the encounter between appellant and law enforcement. The evidence establishes that, when police came into contact with appellant, the officers were aware that a person had been found dead in room 446 of the Econo Lodge, that a person coming from room 446 had admitted to a cab driver that he had shot a person, and that appellant matched the description of the passenger that had been given to police by the cab driver. On the basis of these facts, the police had reasonable suspicion to detain appellant to investigate a potential crime. See Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997).

Appellant does not dispute the existence of reasonable suspicion, rather, appellant contends that McCann's ordering appellant to lie in a prone position while another officer handcuffed appellant transformed the detention into an arrest. The timing of the discovery of the gun is key in the instant case. The evidence establishes that McCann ordered appellant to lie prone, that another officer handcuffed appellant,

5

and that appellant was immediately asked if he possessed a weapon. Appellant then admitted that he had a handgun in the front of his pants. Based on the facts known to McCann, namely that appellant matched the description of a person who had admitted shooting another person and that a person was found to have been shot and killed, it was reasonable for McCann to suspect that appellant was armed and dangerous. As such, the handcuffing of appellant to protect the officers while they determined whether appellant was armed was reasonable and did not transform the temporary detention of appellant into an arrest. See Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997) (citing United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).[5]

Because the handgun was not seized as a result of an illegal arrest, we overrule appellant's first issue.

Jury Instruction

By his second issue, appellant contends that the trial court erred in denying appellant's request for a jury instruction permitting the jury to resolve disputed fact issues surrounding appellant's arrest. The State responds that there was no disputed fact issue presented regarding the legality of appellant's arrest.

Article 38.23(a) of the Texas Code of Criminal Procedure provides, "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it

---

[5] While subsequent events do not impact the admissibility of the handgun, we note that appellant's admission to carrying a weapon gave the officers probable cause to arrest appellant. See TEX. PENAL CODE ANN. § 46.02(a) (West Supp. 2010).

believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). As in appellant's first issue, appellant's second issue challenges the seizure of the handgun as being the result of appellant's illegal arrest. However, as addressed above, the seizure of the handgun was, as a matter of law, effectuated prior to the arrest of appellant. Furthermore, no factual issues were raised regarding the seizure of the handgun. Rather, appellant's requested jury instruction was an attempt to ask the jury to assess the legality of the police conduct based on the undisputed facts, which is a question of law for the trial court to resolve, and the trial court's denial of such a requested instruction is not error. See Madden v. State, 242 S.W.3d 504, 510-11 (Tex.Crim.App. 2007).

We overrule appellant's second issue.

## Allowing the Jury to See Appellant in Handcuffs

By appellant's third issue, he contends that his constitutional rights were violated when members of the jury were allowed to see appellant in handcuffs. The State responds that there was adequate justification to restrain appellant, and that there was no evidence presented to establish the number of jurors in the hallway where appellant was handcuffed nor how many, if any, of those in the hallway actually saw appellant in handcuffs.

The Constitution forbids the use of visible restraints during the penalty phase of a trial unless it is justified by an essential state interest, such as courtroom security. See

7

<u>Deck v. Missouri</u>, 544 U.S. 622, 624, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). In the present case, the transporting officer identified his basis for concern regarding the threat to courtroom security if appellant had not been restrained while being transported to the courtroom. Further, the officer sought and obtained permission from the trial court to take extra precautions to ensure that there would not be a confrontation between appellant and a member of Sommer's family. Thus, the transportation of appellant to the courtroom in handcuffs was shown to have been justified by an essential state interest.

In addition, a brief and fortuitous viewing of a defendant wearing handcuffs by members of the jury is not prejudicial per se and requires an affirmative showing of prejudice by the defendant. See <u>Garza v. State</u>, 10 S.W.3d 765, 767 (Tex.App.— Corpus Christi 2000, pet. ref'd). Here, appellant failed to establish whether any member of the jury actually saw him being transported in handcuffs, and it is clear that if any juror did see appellant so restrained, such would constitute a "brief and fortuitous viewing." Further, even assuming that such a brief and fortuitous viewing occurred, we cannot presume that it caused prejudice, and it was incumbent on appellant to affirmatively show prejudice. <u>Id</u>. However, by failing to question members of the jury to determine whether any saw appellant being transported in handcuffs and, if so, requesting the trial court give the jury an appropriate limiting instruction, appellant waived any error. See <u>id</u>. at 767-68.

Thus, because the handcuffing of appellant while he was being transported to the courtroom was justified by legitimate state interests and because appellant failed to

8

meet his burden to show either that error occurred or that he was harmed by the error, we overrule appellant's third issue.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock<br>
Justice

Do not publish.